O'CONNELL MACHINERY COMPANY, INC., Plaintiff-Appellant,

v.

M.V. "AMERICANA" and Italia Di Navigazione, S.p.A. (d/b/a Italian Line), Defendants-Appellees,

United States of America, Intervenor.

Cal. No. 499, Docket 83–7673.

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1984.

Decided May 4, 1984.

George F. Chandler III, New York City (Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, on brief), for plaintiff-appellant.

Vincent M. DeOrchis, New York City (Haight, Gardner, Poor & Havens, Richard A. Menchini and M.E. DeOrchis, New York City, of counsel), for defendants-appellees.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C. (John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, and Leonard Schaitman and John M. Rogers, Dept. of Justice, Washington, D.C., on brief), for intervenor.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

O'Connell Machinery Company appeals from an order of the United States District Court for the Southern District of New York, 566 F.Supp. 1381 (Knapp, J.), which dismissed O'Connell's complaint containing an in rem cause of action against the *M/V Americana,* on the ground that the vessel was immune from arrest by virtue of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(b). We affirm.

On September 23, 1982, O'Connell filed a complaint in the Southern District demanding personal recovery against Italia Di Navigazione, S.p.A., doing business as the Italian Line, and in rem recovery against one of its ships, the *M/V Americana,* for damages to a gear generator shipped aboard the *Americana* from Genoa, Italy to New York City in 1981. When counsel for the Italian Line informed appellant's counsel that the Line was owned by a subdivision of the Republic of Italy and that the FSIA therefore immunized the vessel from prejudgment attachment, appellant requested the district court to require the Line to show cause why appellant should not be permitted to make the attachment. The district court rejected the application as a request for an advisory opinion, and this Court refused O'Connell's petition for a writ of mandamus.

O'Connell's counsel then notified counsel for the Italian Line that O'Connell intended to arrest the *Americana* unless the Italian Line posted a Letter of Guarantee securing the disputed amount. Faced with this threat, the Italian Line obtained a Letter of Guarantee from the Standard Steamship Owners' Protection and Indemnity Association Ltd. shortly before the ship's next arrival in New York. It followed this with a motion to dismiss appellant's complaint. This appeal is from the order granting Italian Line's motion.

Appellant challenges the district court's decision on several grounds. First, it contends that the Italian Government's ownership interest in the Italian Line was too remote to support the Line's claim of immunity under the FSIA. Second, it argues

that Italy waived its right to assert sovereign immunity from prejudgment attachment. Finally, it contests the constitutionality of provisions in the FSIA which preclude prejudgment attachment in maritime cases. None of these contentions has merit.

The Foreign Sovereign Immunities Act insulates foreign states from the exercise of federal jurisdiction, except under the conditions specified in the Act. *See* 28 U.S.C. § 1604. Section 1603 defines "foreign state" to encompass any "agency or instrumentality" of a foreign state, and includes within the definition of "agency or instrumentality" any entity "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof."

▮ According to the affidavit of Gerardo Carante, Chief Officer of the Commercial Office at the Embassy of the Republic of Italy in Washington, a majority of the shares of the Italian Line is owned by the Societa' Finanziaria Marittima (FINMARE). FINMARE, in turn, is under the direct control of the Istituto per la Ricostruzione Industriale, a public financial entity which coordinates the management of the commercial enterprises of the Italian Government. Based on these facts, which appellant does not dispute, the district court correctly concluded that the Italian Line qualifies as an agency or instrumentality of the Republic of Italy. *See S & S Machinery Co. v. Masinexportimport,* 706 F.2d 411, 415 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983); *In re Rio Grande Transport, Inc.,* 516 F.Supp. 1155, 1158 (S.D.N.Y.1981).

The fact that the Italian Government saw fit to double-tier its administrative agencies did not compel a holding to the contrary. According to the legislative history of the FSIA, political subdivisions were intended to include "all governmental units beneath the central government." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 15, *reprinted in* 1976 U.S.Code Cong. & Ad.

News 6604, 6613. FINMARE fits comfortably within this definition. Moreover, the House Report indicates that "entities which meet the definition of an 'agency or instrumentality of a foreign state' could assume a variety of forms, including ... a transport organization such as a shipping line...." *Id.* at 6614.

One of the purposes of the FSIA was to eliminate the need for attaching the vessel of a foreign government for the purpose of obtaining jurisdiction. *Id.* at 6606. To discourage this practice, the statute provides that notice of the suit will not be deemed effective if the plaintiff improperly has arrested a foreign vessel for the purpose of obtaining in rem jurisdiction. 28 U.S.C. § 1605(b). Prejudgment attachment is permitted only where the foreign state explicitly has waived its immunity and the purpose of the attachment is not to obtain jurisdiction. 28 U.S.C. § 1610(d).

█ Appellant contends that the Italian Government waived its right to assert sovereign immunity from prejudgment attachment when it became a party to the Treaty of Friendship, Commerce and Navigation between the United States and Italy, February 2, 1948, 63 Stat. 2255, T.I.A.S. No. 1965. Article XXIV(6) of the Treaty provides in part that Italy shall not claim immunity "from suit, from execution of judgment, or from any other liability to which a privately owned and controlled enterprise is subject." Relying on *Libra Bank Ltd. v. Banco Nacional de Costa Rica,* 676 F.2d 47, 49 (2d Cir.1982), appellant argues that the phrase "or any other liability" is broad enough to include prejudgment attachments. We rejected a similar argument in *S & S Machinery Co. v. Masinexportimport, supra,* 706 F.2d at 416–18, and we see no reason to depart from that holding, which is in accord with the great weight of authority. *See id.* at 417.

█ To support its claim of unconstitutionality, appellant relies on Article III, Section 2, Cl. 1 of the Constitution, which provides in part that "[t]he judicial Power shall extend ... to all Cases of admiralty and maritime Jurisdiction." Appellant contends that, in curtailing the right of in rem attachment against vessels of foreign states, Congress narrowed the limits of judicial admiralty jurisdiction and, in so doing, violated this constitutional provision. Appellant cites *Amstar Corp. v. S/S Alexandros T.,* 664 F.2d 904, 908–09 (4th Cir. 1981), and *Merchants National Bank of Mobile v. Dredge General G.L. Gillespie,* 663 F.2d 1338, 1350 (5th Cir.1981), *cert. dismissed,* 456 U.S. 966, 102 S.Ct. 2263, 72 L.Ed.2d 865 (1982), as authority for the proposition that maritime liens traditionally have been treated as integral aspects of substantive maritime law. This being so, appellant argues, the immunization from attachment of the vessels of foreign states constitutes legislative interference with the jurisdiction of the admiralty courts.

This argument founders on several grounds. In the first place, at the time the Constitution was adopted, foreign governments played little or no role in the merchant marine. *Berizzi Brothers Co. v. Steamship Pesaro,* 271 U.S. 562, 573, 46 S.Ct. 611, 612, 70 L.Ed. 1088 (1926). When foreign governments began to operate ships for purposes of trade, the Supreme Court held in *Berizzi,* a seminal decision, that such ships were immune from arrest. *Id.* at 574, 46 S.Ct. at 612. It was the whittling away of this immunity that eventually led to the enactment of the FSIA. *See Ruggiero v. Compania Peruana De Vapores,* 639 F.2d 872, 878–79 (2d Cir. 1981); *Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354, 357–58 (2d Cir.1964), *cert. denied,* 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965). However, while the FSIA undoubtedly altered the rights of libelants as they preexisted the Act, it did not alter them as they preexisted the Constitution.

In the second place, the argument that the framers of the Constitution intended to preserve inviolate all the then existing substantive maritime rights has long since been rejected by the Supreme Court. "When the Constitution was adopted, the

**118**

existing maritime law became the law of the United States 'subject to power in Congress to modify or supplement it as experience or changing conditions might require.'" *Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 43, 55 S.Ct. 31, 38, 79 L.Ed. 176 (1934) (quoting *Panama Railroad Co. v. Johnson*, 264 U.S. 375, 386, 44 S.Ct. 391, 393, 68 L.Ed. 748 (1924)); *see Victory Carriers, Inc. v. Law*, 404 U.S. 202, 216, 92 S.Ct. 418, 427, 30 L.Ed.2d 383 (1971); *Hurst v. Triad Shipping Co.*, 554 F.2d 1237, 1241–46 (3d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). Congress did no more than exercise this power when it enacted section 1605(b).

The judgment of the district court is affirmed.