**REFCO, INC., Plaintiff,**

v.

**Abdul Wahab Bin Ebrahim GALADARI and A.W. Galadari Commodities, Defendants,**

and

**The Committee of Receivers for Abdul Wahab Bin Ebrahim Galadari and A.W. Galadari Commodities, Additional Defendant.**

**No. 90 Civ. 1240 (CBM).**

United States District Court, S.D. New York.

Jan. 4, 1991.

Jack Weinberg, Therese M. Doeherty, Marianne Bretton–Granatoor, Graubard Mollen Horowitz Pomeranz & Shapiro, New York City, for plaintiff.

Carlton R. Asher, Jr., Bickel and Brewer, New York City, for defendants.

## OPINION ON MOTION TO REMAND

MOTLEY, District Judge.

Plaintiff has submitted a motion to this court asking that this case be remanded to the state court from which it was removed by The Committee of Receivers for Abdul Wahab Bin Ebrahim Galadari and A.W. Galadari Commodities (The Committee).

### Background

The facts of this case are complex and for the purpose of this motion it is not necessary to state them in detail. Galadari is a citizen of Dubai, United Arab Emirates who controlled a vast business empire. In February 1983, Galadari and Galadari Commodities (Galadari) opened a number of trading accounts with Refco, an Illinois corporation. As of November 1983, Refco alleges that Galadari owed a debt of $4,609,664.20. In 1984, Refco commenced action against Galadari in the State Supreme Court in New York County by order to show cause containing a temporary restraining order which directed defendant to show cause why an order should not be entered granting Refco an order of attachment and directing the sheriff to levy on defendants' property to satisfy any judgement which might be obtained by Refco. *See Refco v. Galadari*, No. 18541/84 (Sup.Ct. New York Cty., August 10, 1984).

After two stipulations of adjournment, Galadari and the Committee opposed Refco's motion and in March 1985, the state court denied Refco's motion for an order of attachment but continued the restraining order as it pertained to a condominium in New York which Galadari maintained. In May 1985, the Committee filed a notice of appeal and a pre-argument statement. In September 1985, Galadari and the Committee moved for an order of dismissal, however, the above motions were withdrawn by stipulation in December 1985. In February 1986, the Committee moved for enlarging the time for perfection of the appeal. By stipulation between the parties, defendants had until March 27, 1990 to answer the complaint or to otherwise move.

Meanwhile in Dubai, Galadari was having severe financial problems stemming from the mismanagement of the Union Bank. On November 12, 1983 pursuant to a decree from the sovereign of Dubai (Decree Number 5), a provisional board was created to manage the Union Bank. This board was established, in part, to avert the "dire financial consequences to countless entities and many thousands of individuals in Dubai and in the region." *See Drexel Burnham Lambert Group v. A.W. Galadari and A.W. Galadari Commodities*, No. 84 Civ. 2602 (S.D.N.Y. January 29, 1987) at ¶ 13, 1987 WL 6164. The provisional Board also imposed a moratorium freezing all liabilities and began the liquidation of Galadari's assets.

In order to assure the fair and orderly liquidation and distribution of Galadari's business assets, the Government of Dubai issued Decree Number 3 on April 17, 1984.[1] Decree Number 3 established a Committee of Receivers to continue the work of the Provisional Board in managing and liquidating the non-banking business of Galadari. The Committee established a set of procedures which would allow for the submission of creditors' claims.

The Committee of Receivers consists of Mr. Rostamani, a member of the business community of Dubai, Mr. Abdulla Lootah who is in charge of the purchasing section of the Federal Ministry of Finance, Mr. Hassan Ibn al Shiekh vice-chairman of the Chamber of Commerce of Dubai and Mr.

---

**1.** Prior to the issuance of Decree No. 3, there had been a number of insolvency proceedings in Dubai which were initiated by a similar procedure of the ruler issuing a decree which provided for the appointment of a committee to liquidate the assets. *Id. at ¶ 39.*

Nabil Aref, director of the marine and road section of the Federal Ministry of Public Works. *Id.* at ¶ 67–71.

Since the Committee's inception it has marshalled and liquidated the assets of the estate and processed creditors claims. *Id.* at ¶ 72. When a claim is disallowed by the Committee an appeal may be taken to the Judicial Committee which is a special court established pursuant to the Decree. *Id.* Since the Committee's inception over 700 claims have been submitted in the aggregate amount of $770,000,000. *See* Aff. Aref at ¶ 6. Refco has participated in the proceedings before the Committee in Dubai and has asked for relief similar to that requested in this suit.

In January of 1987, this court in a substantially similar case ruled that the Dubai proceedings were entitled to comity and stayed the action filed in this court. *Drexel Burnham Lambert Group, Inc. v. Galadari*, 84 Civ. 2602 (S.D.N.Y., January 29, 1987).

On March 27, 1990, over five years after the action was first commenced in state court, the Committee removed the action to this court. Plaintiff presently has a motion before this court asking that the case be remanded to state court.

### DISCUSSION

The Committee has removed this action pursuant to 28 U.S.C. § 1441(d) which states:

> Any civil action brought in a State court against a foreign state as defined in 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without a jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

Plaintiff argues that the Committee is not a "foreign state" and as such cannot avail itself of the § 1441(d) extended time period. If defendant is not, as plaintiff contends, a "foreign state" then pursuant to § 1446(b) defendants would have had only thirty days to file a notice of removal after receiving a copy of the initial pleading. Thus the first question which this court must answer is whether a "foreign state" is involved in this case.

As previously stated § 1441 takes its definition of foreign state from § 1603(a) of the Foreign Sovereign Immunities Act (FSIA) which states:

> A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
>
> (b) An "agency or instrumentality of a foreign state" means any entity—
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) Which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or otherwise interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

Defendant contends that the Committee of Receivers is an agency or instrumentality of a foreign state as defined by the Foreign Sovereign Immunities Act. Plaintiff obviously takes the opposing position.

Unfortunately, the great majority of cases defining instrumentality or agency concern the question of whether a government owned commercial entity is an agency or instrumentality and thus are of little help in this case. Neither this court nor the parties have been able to find a case or legislative history which states what requirements an entity must meet to constitute a political subdivision in a non-commercial context. There is, however, some case law which provides a modicum of help in determining the unique facts of this case. In *O'Connell Machinery Co., Inc. v. M.V. Americana*, 734 F.2d 115, (2d Cir.), *cert. denied*, 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984) the court found that an Italian shipping corporation was an

agency or instrumentality of the Italian government when a majority of the corporation's shares were owned by an entity under the direct control of a public financial entity. Of interest in this case is the fact that the court found that an entity which coordinated the management of the commercial enterprises of the Italian government was an agency or instrumentality of the government. *Id.* at 116. Similarly, another court has found that the administrative arm of the Caribbean Regional Labour Board was an instrumentality of a foreign state. This labor board had the responsibility of negotiating labor arrangements between the British West Indian governments and the United States. *Rios v. Marshall,* 530 F.Supp. 351 (S.D.N.Y.1981). *See also, Bowers for and on behalf of NYSA–ILA Pension Trust Fund v. Transportes Navieros Ecuadorianos (Transnave),* 719 F.Supp. 166, 170 (S.D.N.Y.1989) (court gives weight to fact that the agency was created by presidential decree).

"According to the legislative history of the FSIA, political subdivisions were intended to include 'all governmental units beneath the central government'" *O'Connell,* 734 F.2d at 116 (citing H.R.Rep. No. 1487, 94th Cong., 2d Sess. 15, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6613. The legislative history further evinces the congresses intent that the definition of agency or instrumentality be broad. *See Id.* In addition, "Statements of foreign officials ... have been accorded great weight in determining whether an entity is entitled to claim the protection of the FSIA". *S.S. Machinery Co. v. Masinexportimport,* 706 F.2d 411, 415 (2d Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983) (citing *Yessenin–Volpin v. Novosti Press Agency,* 443 F.Supp. 849, 854 (S.D.N.Y.1978)).

In this case, defendants have submitted the affirmation of Nabil Aref a member of the Committee and more importantly a director of the marine and road section of the Federal Ministry of Public Works in Dubai. Mr. Aref states that the Committee is an agency or instrumentality of the Government of Dubai because it was established specifically by the government for the pur-

pose of winding up the affairs of Galadari. Aref aff. at ¶ 17.

■ This court agrees with Mr. Aref and finds that the Committee is an agency or instrumentality of a foreign state. The following facts support this position. First, the Committee was specifically set up by a decree issued by the sovereign of Dubai. Second, the Committee was appointed for the express purpose of preventing the spread of negative economic ramifications from the financial problems of the Galadari businesses. Third, and perhaps most importantly, it appears to this court that the Committee is a quasi-judicial agency. The court bases this opinion on the specific language of the decree and the powers with which the Committee is vested. Decree Number 3 specifically states, "The Committee is hereby empowered to issue decisions which shall be in writing and shall have the effect of an order or judgement." ¶ 12(f). An additional provision states, "All actions or proceedings of any kind instituted in Dubai prior to the date hereof in respect of Mr. Galadari are hereby stopped." ¶ 12(a). The decree further promulgates that all attachments "obtained in the Dubai Courts or elsewhere against Mr. Galadari ... are hereby vacated. ¶ 12(b). Yet another provision of the decree provides that all cases against Galadari proceeding in the regular courts of Dubai were to be transferred to the Committee. ¶ 12(e). Finally, the decree specifically provides that "[n]o liability personal or otherwise shall attach to ... the Committee." ¶ 9. This immunity appears to be similar in nature to the immunity afforded courts in this country. The above statements clearly demonstrate to this court that the Committee is functioning as a judicial or quasi-judicial body.

In addition to the judicial or quasi-judicial nature of the Committee, further evidence shows that the members of the Committee also hold positions with high government ministries. Thus this court finds that the Committee is an agency or instrumentality of a foreign state.

Plaintiff claims that *Remington Rand Corp. v. Business Systems Inc.*, 830 F.2d 1260, 1265 (3d Cir.1987) is directly on point. In *Remington,* the Third Circuit found that the acts of Spanish "bankruptcy trustees are not considered policy determination[s] by a government to give effect to its political and public interest." *Id.* at 1265 (citing *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287, 1294 (3d Cir.1979)). Whereas this may be true of ordinary bankruptcy trustees, in the present case the Committee was specifically appointed by the sovereign to effectuate important public policy in this unique case.[2]

Furthermore an entity may be an agency or instrumentality and at the same time its actions may not rise to acts of state. The legislative history states, "[t]he fact that an entity is an 'agency or instrumentality of a foreign state' does not in itself establish an entitlement to sovereign immunity." 5 U.S.Code and Ad.News 6614. All *Remington* holds is that the acts of a trustee do not constitute acts of state and are thus not entitled to sovereign immunity. In this case, defendant is not asking this court to determine whether its actions are acts of state but rather whether it is an agency or instrumentality of a foreign state.

■ 28 U.S.C. § 1441(d) also requires that the moving party show cause as to why the thirty day time period for removal should be enlarged. In this case, defendant removed the action more than five years after it was first initiated. Given this lengthy delay in removing the case, the "outermost limits of good cause" must be demonstrated to warrant allowing the matter to go forward in this federal forum. *Alvarez v. National Shipping Corporation* 80 Civ. 491 (Lexis, Genfed library) (S.D.N.Y. Oct. 2, 1980). *Alvarez* sets forth some of the factors to consider such as the purpose of the removal statute, the extent of prior activity in the state system, the prejudice to both parties, the effect on the substantive rights of the parties and any intervening equities. *Id.*

■ The legislative history makes clear that one of the important reasons for passage of § 1441(d) was to allow for a uniform body of law concerning foreign states to emerge in the federal courts. 5 U.S. Code Cong. and Ad.News 6631. This case fits clearly within the legislative intent. As previously stated, this court in a substantially similar case ruled that the decisions of the Committee deserved comity and has therefore stayed those proceedings. *See Drexel* at ¶ 52. Presently allowing the state court to adjudicate this action would not only constitute a tremendous waste of judicial resources but could also result in entirely inconsistent opinions and results regarding the same questions of law and substantially similar questions of facts.

Examining the additional factors which *Alvarez* lays out, there is substantial disagreement between the parties as to the extent of the litigation in the state court. However, it is undisputed that neither an answer nor any dispositive motions have been ruled upon by the state court. Plaintiff further claims that the Committee has waived its right to remove because they participated in the state court action. Courts have been extremely hesitant to find that a foreign state has waived its right to remove an action. This Circuit has gone as far as finding that a forum selection clause allowing for suit in the state court is not a waiver of the right to remove because "congress deliberately sought to channel cases against foreign sovereigns away from the state courts and into the federal courts...." *Proyecfin De Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.,* 760 F.2d 390, 394 (citing *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)). *See also In re Delta America Re*

**2.** In the *Drexel* opinion this court specifically found that the provisions of the degree governing liquidation were similar to chapter 7 of our bankruptcy code. ¶ 34. This opinion in no way mitigates the above fact. However, whereas the ultimate procedure for liquidation may be similar to Chapter 7, the manner in which the Committee was set up and the reasons for the Committee being established in the first place make this a unique case and one in which the Committee is not merely a bankruptcy trustee.

*Insurance Co., Inc.*, 900 F.2d 890, 893 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990) (FSIA provided absolute right of removal to federal court and waiver must be clear and unequivocal); Wright and Miller, Federal Practice and Procedure § 3729 at 486 (1985) (there is uncertainty as to whether foreign state ever waives right of removal). In light of the strong policy in favor of removal involving foreign sovereigns, this court cannot find that the limited participation of the defendant in the state court action constituted a waiver of the right to remove the action.

■ As stated above, although the case has been in state court for an extended period of time, little has actually happened in that court. Indeed, an answer has not as yet been filed. Taking this into consideration, it appears that removal would cause little prejudice to the plaintiff. Plaintiff claims that prejudice would result because it would receive a jury trial in state court whereas a bench trial would take place in federal court. The absence or presence of a jury trial does not constitute prejudice. Indeed the legislative history demonstrates that removing a case would "extinguish a demand for a jury trial" and that "[t]his preemption of State court procedures in cases involving foreign sovereigns is clearly constitutional." at 6632. *See also Ruggiero v. Compania Peruana De Vapores,* 639 F.2d 872, 878–881 (2d Cir.1981).

This court does not condone the Committee's action in waiting over five years to remove the case. This court, however, finds that good cause has been shown because of the importance of this case being in federal court to effectuate the purpose and intent of the FSIA in creating a uniform body of law and the fact that no substantial proceedings have taken place in the state court.

This case is readily distinguishable from a number of district court cases in this Circuit that found that the defendant was unable to provide good cause for delay. In those cases, a substantial amount of activity had already occurred in the state court which would have resulted in prejudice and delay to the plaintiff. *See Boland v. Bank Sepah–Iran,* 614 F.Supp. 1166, 1169 (S.D. N.Y.1985) ("removal should be rejected based on the extent to which this action had progressed in state court"); *Boskoff v. Boeing Co.,* No. 83 Civ. 2756, 1984 WL 1066 (S.D.N.Y. Oct. 19, 1984) (Lexis, Genfed Library) (extensive motions ruled upon and case close to trial); *Elbaz v. Port Authority of New York & New Jersey,* No. 83 Civ. 4482 (S.D.N.Y. Nov. 21, 1983) (Lexis, Genfed Library) (extensive preparations in state court and case did not implicate "in any important manner the policies of the Foreign Sovereigns Immunities Act", since defendant was acting in a commercial capacity and "no violence to purposes of the act will be done"). In addition, those cases did not implicate the very heart of the congressional rational for providing removal under the FSIA.

■ Plaintiff's final argument is that removal is defective because all the defendants, in this case Galadari, have not consented to the removal. The court rejects this argument. The legislative history specifically states, "New subsection (d) of section 1441 permits the removal of any such action at the discretion of the foreign state, even if there are multiple defendants and some of these defendants desire not to remove the action ..." 5 U.S.Code and Ad.News 6631. *See also, Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1375, 1377–1378 (5th Cir.1980); Wright & Miller, Federal Practice and Procedure § 3729 at 484 (1985).

This court will not remand the case to state court for the above stated reasons. The court will further order that this case be consolidated with the *Drexel* case and stayed, pending the outcome of the proceedings in Dubai for the reasons stated in the *Drexel* opinion.