**PAREX BANK, Plaintiff,**

v.

**RUSSIAN SAVINGS BANK a/k/a Savings Bank of the Russian Federation a/k/a Russian Federation Savings Bank of the Russian Federation a/k/a Sberbank, Defendant.**

**No. 99 Civ. 8760(RWS).**

United States District Court,
S.D. New York.

Jan. 20, 2000.

Verner Simon, New York City by Paul W. Verner, of counsel, for Plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City by Howard S. Zelbo, Joseph T. Dixon, of counsel, for Defendant.

*OPINION*

SWEET, District Judge.

Plaintiff Parex Bank ("Parex") has moved, pursuant to 28 U.S.C. § 1447(c), to remand this action to New York State Supreme Court, New York County. For the reasons set forth below, the motion is denied.

### Background and Prior Proceedings

On July 21, 1999, Parex, a Latvian bank which does business in New York, filed this action in New York Supreme Court against Russian Savings Bank a/k/a Savings Bank of the Russian Federation a/k/a Russian Federation Savings Bank a/k/a Commercial Savings Bank of the Russian Federation a/k/a Sberbank ("Sberbank"), a Russian bank which also does business in New York. Parex alleges that Sberbank failed to perform on a non-deliverable forward exchange contract purportedly entered into by Parex and Sberbank. On July 22, 1999, Justice Charles E. Ramos of the New York Supreme Court issued an order requiring Sberbank to show cause why an order of attachment should not be issued permitting a levy on Sberbank's account at the Bank of New York for assets totaling $3,755,642.01, as well as to show cause why a preliminary injunction should not be issued restraining Sberbank from selling, transferring, or assigning such assets. The order also temporarily restrained Sberbank from selling, transferring, or assigning those assets. Parex, as required, posted a bond of $750,000 on July 27, 1999, and served Sberbank with the summons and complaint and the order to show cause.

On August 9, Sberbank filed a notice of removal to remove the action to this Court, on the grounds of federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1330(a) & 1441(d).

The instant motion to remand was filed on September 10, 1999. Oral argument on the motion was heard on October 13, 1999, at which time the motion was deemed fully submitted.

## Discussion

Section 1441(d) of Title 28 provides:

Any civil action brought in a State court against a foreign state as defined in § 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district ... embracing the place where such action is pending.

28 U.S.C. § 1441(d). Federal subject matter jurisdiction exists over matters involving foreign states pursuant to 28 U.S.C. § 1330(a). Sberbank maintains that it is a foreign state as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a), which states that a "foreign state" "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). Under subsection (b), an "agency or instrumentality of a foreign state" is defined as an entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). Parex does not dispute that Sberbank meets prongs (1) and (3) of subsection (b). The inquiry thus hinges on prong (2), i.e., whether (i) Sberbank is an organ of a foreign state or political subdivision thereof; or (ii) a majority of Sberbank's shares or other ownership interest is owned by a foreign state or political subdivision thereof. Sberbank maintains that it satisfies both (i) and (ii). Because this Court has determined that Sberbank has satisfied (ii), it need not consider whether Sberbank satisfies (i).

Russian law requires the Russian Central Bank (the "Central Bank") to maintain ownership of a majority of the shares of Sberbank. (Fomin Decl. ¶ 5.) As of October 7, 1999, the Central Bank owned approximately 66.5% of Sberbank's voting common stock and over 60% of all of Sberbank's outstanding stock. (*Id.*) Parex concedes that the Central Bank is an "agency or instrumentality" of the Russian State.

Under § 1603(a), because the Central Bank is an agency or instrumentality of the Russian State, the Central Bank itself is, for purposes of this inquiry, considered to be a foreign state. Since the Central Bank owns a majority of Sberbank's shares, Sberbank thus meets prong (2) of § 1603(b). Since Sberbank also meets prongs (1) and (3) of § 1603(b), it also is an agency or instrumentality of the Russian State, and thus, under § 1603(a), is also considered to be a foreign state itself, under §§ 1441(d) and 1330(a), for purposes of this inquiry.

Parex maintains, however, that § 1603 does not contemplate successive tiers of ownership as qualifying for "foreign state" status, i.e., using the logic displayed in the previous paragraph, a corporation many stages removed from direct control by a foreign government could still be considered a foreign state so long as majority ownership could be traced back to the government through majority ownership at each corporate level.

While the language of the statute itself is not a model of clarity, *see, e.g., Hyatt Corp. v. Stanton,* 945 F.Supp. 675, 685–90 (S.D.N.Y.1996); *In re Aircrash Disaster Near Roselawn, Indiana,* 909 F.Supp. 1083, 1088 (N.D.Ill.1995), the plainer reading of the statutory language contemplates successive tiers. This reading is supported by the legislative history of the FSIA, the controlling authority in this circuit, *see O'Connell Machinery Co. v. M.V. "Americana",* 734 F.2d 115, 116–17 (2d Cir.1984), and the majority of courts which have considered the issue, *see, e.g., In re Air Crash Disaster Near Roselawn,* 96

F.3d 932, 940–41 (7th Cir.1996) (citing cases).

■ Parex, on the other hand, relies heavily on *Hyatt Corp. v. Stanton,* 945 F.Supp. 675, for a reading of § 1603 not permitting tiering. As *Hyatt* points out, the reading of § 1603 which permits tiering renders the phrase "or political subdivision thereof" in § 1603(b)(2) superfluous, because under § 1603(a), a political subdivision is already included in the definition by the phrase "foreign state." *See Hyatt,* 945 F.Supp. at 685. On the other hand, to read the statute as Parex does—excluding "from the definition of 'agency or instrumentality' corporations a majority of whose shares are owned by an entity that is itself an agency or instrumentality of a foreign state, but not a foreign state or political subdivision thereof"—contradicts "the definition of 'foreign state' in subsection (a), which includes an agency or instrumentality of a foreign state." *Id.* at 685–86. The *Hyatt* court felt that either interpretation was equally inconsistent and passed on to consider other factors. However, an interpretation giving an outright contradiction is less consistent than one giving a superfluity—as a principle of statutory construction. Thus, a better reading of the plain language of § 1603 would permit tiering.

Moreover, the legislative history supports an inclusive reading of "foreign state." The *Hyatt* court, citing *Gates v. Victor Fine Foods,* 54 F.3d 1457 (9th Cir. 1995), emphasizes that tiering could expand FSIA coverage considerably. *See Hyatt,* 945 F.Supp. at 688–89. Yet this appears to have been one of the very goals of the legislation: "Such broad jurisdiction in the Federal courts should be conducive to uniformity in decision, which is desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6605.

Furthermore, *Hyatt* does not sit comfortably with *O'Connell Machinery Co. v. M.V. "Americana",* 734 F.2d 115 (2d Cir. 1984), the sole decision from the Second Circuit to touch upon this issue. The *O'Connell* court upheld a district court ruling that a company called the Italian Line, which was majority-owned by the Societa' Finanziaria Maritima (FINMARE), which itself was under the direct control of the Istituto per la Riconstruzione Industriale, a public financial entity coordinating commercial enterprises of the Italian Government, qualified as an agency or instrumentality of Italy. *See id.* at 116. "The fact that the Italian Government saw fit to double-tier its administrative agencies did not compel a holding to the contrary." *Id.*

*Hyatt* distinguished *O'Connell* on the grounds that the *O'Connell* court considered FINMARE to be a political subdivision, not an administrative agency. However, the language—"saw fit to double-tier its administrative agencies"—suggests that the *O'Connell* court did not think it necessary to distinguish between administrative agencies and political subdivisions. This makes sense, of course, because § 1603(a) itself does not make such distinctions. Other courts have cited *O'Connell* in support of tiering. *See, e.g., Talbot v. Saipem A.G.,* 835 F.Supp. 352, 353 & n. 2 (S.D.Tex. 1993); *Rutkowski v. Occidental Chem. Corp.,* No. 83 C 2339, 1988 WL 107342, at *1 (N.D.Ill. Oct. 5, 1988); *Great American Boat Co. v. Alsthom Atlantic, Inc.,* Nos. 84–0105, 84–5442, 1987 WL 4766, at *3 (E.D. La. April 8, 1987). *Hyatt's* distinction is not persuasive. A holding permitting tiering sits better with the sole controlling authority in this circuit on the question.

■ For these reasons, it is concluded that Sberbank is an agency or instrumentality of the Russian State, and thus, under the definition in 28 U.S.C. § 1603(a), a "foreign state." Therefore, removal to this Court under § 1441(d) was proper.

## Conclusion

For the reasons stated above, Parex's motion to remand, and for attorney's fees, is denied.

It is so ordered.