**LEHMAN BROTHERS COMMERCIAL CORPORATION and Lehman Brothers Special Financing Inc., Plaintiffs,**

v.

**MINMETALS INTERNATIONAL NON–FERROUS METALS TRADING COMPANY and China National Metals and Minerals Import and Export Company, Defendants.**

**Minmetals International Non–Ferrous Metals Trading Company, Counterclaim Plaintiff,**

v.

**Lehman Brothers Inc., Lehman Brothers Asia Limited, Lehman Brothers Securities Asia Limited and Lehman Brothers Capital Co. (H.K.) Limited, Additional Counterclaim Defendants.**

**No. 94 CIV 8301 JFK.**

United States District Court, S.D. New York.

April 25, 2001.

Cadwalader, Wickersham & Taft (Jonathan D. Polkes, Douglas Koff, Tom M. Fini, Douglas L. Friedman, Matthew L. Mustokoff, of counsel), New York City, for Plaintiffs and Additional Counterclaim Defendants.

Kaye Scholer Fierman Hays & Handler, (Aaron Rubinstein, Phillip A. Geraci, Jeffrey A. Fuisz, Michael M. Pomerantz, of counsel), New York City, for Defendants and Additional Counterclaim Plaintiff.

### OPINION and ORDER

KEENAN, District Judge.

Before the Court is a motion by the Plaintiffs Lehman Brothers Commercial Corporation and Lehman Brothers Special Financing, Inc.[1] to strike the jury demand in this case pursuant to 28 U.S.C. § 1330(a) ("section 1330(a)"). The Defendants Minmetals International Non–Ferrous Metals Trading Company ("Non–Ferrous") and China National Metals & Minerals Import & Export Corporation ("Minmetals") oppose the motion. For the reasons that follow in this Opinion and Order, the Court grants Lehman's motion.

---

1. The Court will use the shorthand reference "Lehman" when referring to the Plaintiffs

Any trial in this case will be before this Court without a jury.

### BACKGROUND

The Court will discuss only those circumstances that are relevant to the current motion, as the background to this case is fully set forth in a previous decision of this Court. *See Lehman Bros. Commercial Corp. v. Minmetals Int'l Non–Ferrous Metals Trading Co.*, No. 94 Civ. 8301, 2000 WL 1702039 (S.D.N.Y. Nov. 13, 2000). Lehman, a global investment bank, is a citizen of the United States. *Id.* at *1. Minmetals is the parent corporation of the Minmetals Group, an international trading conglomerate that is owned entirely by the People's Republic of China ("China") and reports directly to China's Ministry of Foreign Trade and Economic Cooperation. *Id.* Non–Ferrous is a wholly-owned subsidiary of Minmetals. *Id.*

Lehman originally asserted that this Court's jurisdiction in this case was based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(2), and alternatively, upon section 1330(a), known as the Foreign Sovereign Immunities Act, *codified at* 28 U.S.C. §§ 1330, 1441(d), 1602 *et seq.* ("FSIA"). Along with its answer to Lehman's complaint, Non–Ferrous asserted fourteen counterclaims against Lehman, two of which were subsequently dismissed by an Opinion and Order of this Court. *See Lehman Bros. Commercial Corp.*, 2000 WL 1702039 at *10.

Both Lehman and the Defendants entered jury demands in this case. In a letter to this Court dated November 30, 2000, however, Lehman stated that this Court's exclusive source of jurisdiction in this case was section 1330(a), which, according to Lehman, mandates a nonjury

and/or Counterclaim Defendants collectively.

trial. The parties subsequently briefed and filed the motion that is now before the Court.

## *DISCUSSION*

The FSIA provides that "[t]he district courts shall have original jurisdiction ... of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief...." 28 U.S.C. § 1330(a). Section 1603(a) of that title states that the term "foreign state" "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state...." *See* 28 U.S.C. § 1603(a) ("section 1603(a)").

Lehman argues that because this case is a civil action against two foreign-state defendants, section 1330(a) requires that any trial in this case be nonjury. The Defendants, on the other hand, argue that this case may be tried before a jury, at least in part, for three reasons: (1) Non–Ferrous is not a foreign-state defendant as defined in section 1603(a); (2) foreign-state defendants can waive the protection of the nonjury provision in section 1330(a); and (3) section 1330(a) does not govern Non–Ferrous' counterclaims against Lehman.[2] The Court will address the Defendants' contentions in that order.

## A. *FSIA's Applicability to Non–Ferrous*

■ Minmetals concedes that it is governed by the FSIA because it is the instrumentality of a foreign state, China. (*See* Defs.' Opp. Mem. at 10, 15). Non–Ferrous, on the other hand, asserts that it does not fall under the FSIA because it is

neither a political subdivision of a foreign state (China) nor an agency or instrumentality of China. Lehman does not argue that Non–Ferrous is a political subdivision of China, and so this Court need only determine whether Non–Ferrous is an agency or instrumentality of China.

The term "agency or instrumentality of a foreign state" is defined in 28 U.S.C. § 1603(b) ("section 1603(b)") as "a separate legal person, corporate or otherwise, and ... [*inter alia,*] a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof...." 28 U.S.C. § 1603(b)(1)-(2).

Non–Ferrous argues that it is not an "agency or instrumentality of a foreign state" as defined in section 1603(b) because it is not majority-owned by a foreign state or a political subdivision of a foreign state. Non–Ferrous acknowledges that its sole owner, Minmetals, is an instrumentality of a foreign state. It argues, however, that because Minmetals is neither a foreign state nor a political subdivision of a foreign state, Non–Ferrous cannot be an "agency or instrumentality of a foreign state" as defined in section 1603(b). As a result, it would not be a "foreign state" as defined in section 1603(a), and would not fall under the FSIA.

■ Non–Ferrous' argument depends upon the breadth of the term "foreign state" as it is used in section 1603(b). If that term is used in section 1603(b) to refer only to foreign states themselves, Non–Ferrous is not an agency or instrumentality under that subsection.[3] On the

---

2. The Defendants also argue that Lehman cannot withdraw its jury demand without the Defendants' consent. (*See* Defs.' Opp. Mem. at 7–8) (discussing Fed.R.Civ.P. 38(d)). The Court rejects this argument in light of the Court's discussion, *infra,* in this Opinion and Order.

3. The Court notes that Non–Ferrous has already asserted in this case that it is a "state-owned" company, and has submitted evidence to that effect. (*See, e.g.,* Polkes Aff. Ex. A at 222, Ex. B at 157). Indeed, Non–Ferrous moved for summary judgment on the grounds that under Chinese law, Lehman's

other hand, if the term "foreign state" in section 1603(b) itself includes an agency or instrumentality of a foreign state as defined in section 1603(a), then Non–Ferrous does fit that definition because it is majority-owned by Minmetals, a "foreign state."

The Second Circuit has not yet squarely addressed the issue of whether the use of the term "foreign state" in section 1603(b) includes the agencies and instrumentalities of foreign states as defined in section 1603(a). Other circuits have spilt on the issue, however, as have other courts in this district. *See, e.g., In re Air Crash Disaster Near Roselawn, Ind.,* 96 F.3d 932, 935, 939 (7th Cir.1996) (includes agencies and instrumentalities); *Gates v. Victor Fine Foods,* 54 F.3d 1457 (9th Cir.1995) (does not include agencies and instrumentalities); *Parex Bank v. Russian Sav. Bank,* 81 F.Supp.2d 506 (S.D.N.Y.2000) (includes agencies and instrumentalities); *Hyatt Corp. v. Stanton,* 945 F.Supp. 675 (S.D.N.Y.1996) (does not include agencies and instrumentalities).

The Ninth Circuit has ruled that the term "foreign state" in section 1603(b) does not include the agencies and instrumentalities of foreign states. *See Gates,* 54 F.3d 1457. In *Gates,* the court declined to extend the provisions of the FSIA to a pork-processing plant indirectly owned by the Canadian province of Alberta. *Id.* The court adopted a narrow reading of "foreign state" in section 1603(b) for three reasons. *See id.* at 1462.

First, the Court opined that the term "includes" in section 1603(a) should be read as "encompasses" rather than "is" or "is defined as," as follows: " 'foreign state' ... [encompasses] a political subdivision of a foreign state or an agency or instrumentality of a foreign state." *See id.* That phrase would therefore describe what the use of the term "foreign state" could possibly but not necessarily include in any one instance.

Second, the *Gates* court noted that if the definition of "foreign state" in section 1603(a) fully applied to that term in section 1603(b), the explicit inclusion of the phrase "or a political subdivision thereof" in section 1603(b) would be redundant. *Id.*

Third, the court found that the FSIA's legislative history supported a conclusion that Congress intended "foreign state" as it is used in section 1603(b) to apply only to foreign states themselves. *Id.* From a House Report, the court quoted Congress as stating, "[t]he second criterion requires that ... a majority of an entity's shares or other ownership interest be owned by a foreign state (*or by a foreign state's political subdivision* )." *Id.* (quoting H.R.Rep. No. 94–1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614 (emphasis added by the *Gates* court)). The court concluded that it could not add government agencies or instrumentalities to section 1603(b) when Congress could easily have done so itself, had it so intended. *Id.*

More recently, the Seventh Circuit ruled that the term "foreign state" as used in section 1603(b) does include the agencies and instrumentalities of foreign states. *See Roselawn,* 96 F.3d 932. In *Roselawn,* the court held that the FSIA governed an

---

claims were barred because Non–Ferrous was an unlicensed, "state-owned" company. *See Lehman Bros. Commercial Corp.,* 2000 WL 1702039 at *15; Polkes Aff. Ex. E at 3–4. On the present submissions, this Court cannot determine whether a corporate subsidiary can be sufficiently "state-owned" to trigger relevant Chinese licensing regulations without similarly triggering the provisions of the FSIA. Moreover, the parties have not addressed whether Non–Ferrous could be considered an "organ of a foreign state" as an alternative basis for satisfying section 1603(b). *See* 28 U.S.C. § 1603(b); *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect,* 89 F.3d 650, 654–55 (9th Cir.1996).

airplane manufacturer that was indirectly owned by the French and Italian governments through two commercial aerospace companies. *Id.* at 935, 939.

The *Roselawn* court found that Congress' intent to use the term "foreign state" broadly in section 1603(b) was evident from the plain language of § 1603(a) as well as from the legislative history of the FSIA. *Id.* at 939–41. The court noted that even if that broad definition would render the· explicit inclusion of political subdivisions in section 1603(b) redundant, it was not empowered to rewrite the statute by excising political subdivisions and government agencies or instrumentalities from the definition of "foreign state" in section 1603(a). *Id.* at 940–41. The court also rejected the argument that the use of "includes" in § 1603(a) should be read as "encompasses," rather than "is defined as." *Id.*

This Court concurs with the reasoning in *Roselawn.* The Court finds that the plain language of section 1603 is clear, while the legislative history behind it is not clear. Section 1603(a) states, plainly, that the term "foreign state" "includes ... an agency or instrumentality of a foreign state...." 28 U.S.C. § 1603(a). Congress expressly intended for that definition to apply "[f]or the purposes of this chapter ... except as used in section 1608 of this title." 28 U.S.C. § 1603 & (a). Congress made no similar exception for section 1603(b), and so neither will this Court.

Given this broad definition and use of "foreign state," the additional inclusion of the phrase "political subdivision thereof" along with "foreign state" in section 1603(b) could be redundant. A narrower reading of that term, however, would flatly contradict its definition in section 1603(a). *See Parex Bank,* 81 F.Supp.2d at 508. This Court cannot disregard Congress' clear instructions by refusing to construe "foreign state" in section 1603(b) in the way that Congress defined it in section 1603(a).· Accordingly, the Court rules that the FSIA applies to Non–Ferrous as an agency or instrumentality of a foreign state.

### B. Waiver

■ The Defendants seek to waive the nonjury provision in section 1330(a), arguing that foreign-state defendants can waive that provision because it exists for their own protection. Lehman opposes, arguing that the provision is jurisdictional, and, in any event, is mandatory and cannot be waived. Based on the plain language of section 1330(a), this Court agrees that the nonjury provision is mandatory and cannot be waived.

Section 1330(a) provides, in pertinent part, that this Court has jurisdiction over "any nonjury civil action against a foreign state ... as to any claim for relief...." *See* 28 U.S.C. § 1330(a). By its own plain terms, the statute provides for a nonjury proceeding without any qualification or distinction concerning the wishes of either plaintiffs or foreign-state defendants.

The Second Circuit has stated that "as a matter of statutory construction, no jury can be had in a federal court against a foreign state.... [B]y its clear terms [section 1330(a) ] provides only for a nonjury civil action against foreign states...." *See Ruggiero v. Compania Peruana De Vapores "Inca Capac Yupanqui",* 639 F.2d 872, 875 (2d Cir.1981). Although neither the *Ruggiero* court, nor any court, has addressed the issue of whether a foreign-state defendant can waive the nonjury provision in section 1330(a) at its own request, this Court sees nothing in the plain language of section 1330(a) that would permit such a waiver.

■■ As the Supreme Court instructed in *United States v. Ron Pair Enterprises, Inc.,* "where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal quotation marks omitted). The *Ron Pair* Court noted, however, that a statute's plain meaning is not conclusive "in the rare cases in which the literal application of [the] statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242, 109 S.Ct. 1026 (internal quotation marks omitted).

The Defendants contend that this is that rare case. They argue that Congress enacted the nonjury provision of section 1330(a) in order to protect foreign-state defendants from domestic juries. As a result, they argue that Congress intended to enable foreign-state defendants to waive that provision, even though the statute contains no such qualification.

■■ In enacting section 1330(a), Congress was no doubt motivated, in part, by a desire to protect foreign-state defendants from domestic juries. As noted in *Ruggiero,* "[w]hatever our enthusiasm over the jury may be, this is not necessarily shared by foreign governments—particularly those which may fear that at one time or another they may be politically unpopular with Americans." 639 F.2d at 880 n. 12; *see also* Committee on Int'l Litig., Commercial & Fed. Litig. Section, N.Y. State Bar Assoc., *A Foreign–State Defendant's Right to Trial By Jury Under the Foreign Sovereign Immunities Act,* 26 Tex. Int'l L.J. 71 (1991) ("The FSIA is based on the assumption that foreign states would generally prefer bench trials.").

Nevertheless, Congress also sought to promote uniformity in federal judicial actions that involved foreign sovereigns. *See* H.R. Rep. No. 94–1487, at 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6611–12 ("[a]ctions tried by a court without a jury will tend to promote a uniformity in decision where foreign governments are involved"); *see also Houston v. Murmansk Shipping Co.,* 667 F.2d 1151, 1154 (4th Cir.1982) ("[p]lainly Congress intended to foster a uniformity of decisions in cases under the FSIA by having them tried to the court without a jury"). This policy would be undermined by permitting foreignstate defendants to waive the nonjury provision in section 1330(a) at their own discretion.

The Court finds no clear legislative intent to permit a waiver of the nonjury provision of section 1330(a). The statute's language, on the other hand, is plain. Therefore, this Court must enforce section 1330(a) according to its own terms, and direct that any trial in this case be nonjury.[4]

### C. *Non–Ferrous' Counterclaims*

■■ Non–Ferrous argues that section 1330(a) does not govern its counterclaims against Lehman because they are claims against a domestic plaintiff, rather than against a foreign state. Non–Ferrous argues that this Court instead has diversity jurisdiction over those claims, pursuant to 28 U.S.C. § 1332(a)(2). Non–Ferrous concludes that a jury trial is, therefore, permissible on its counterclaims against Lehman.

■■ Non–Ferrous' argument is contrary to the plain language of section 1330(a), which speaks in terms of "actions"

---

4. As a result, this Court need not address Lehman's further contention that the nonjury provision in section 1330(a) cannot be waived because it is jurisdictional. (*See* Lehman's Mem. in Supp. at 7–10).

rather than "claims" against foreign sovereigns. *See* 28 U.S.C. § 1330(a); *First Nat'l Bank of Mobile v. Kaufman,* 593 F.Supp. 1189, 1191–92 (N.D.Ala.1984). Section 1330(a) governs (1) any claim for relief, (2) to which a foreign state is not entitled to immunity, (3) in any civil action against a foreign state. *See id.*

Non–Ferrous' counterclaims meet all three conditions for jurisdiction under section 1330(a). First, those counterclaims are indeed claims for relief. Second, Non–Ferrous is not entitled to immunity on those claims. It is self-evident that Non–Ferrous could not obtain immunity on its own counterclaims. Third, this case is a civil action against Non–Ferrous, a foreign state as defined in section 1603(a). As a result, section 1330(a) mandates a nonjury trial for those claims, for the FSIA's legislative history does not instruct otherwise.[5]

The Court does not agree with Non–Ferrous that a defendant's counterclaims constitute an "action" against a plaintiff. (*See* Defs.' Opp. Mem. at 16 (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* No. 91 Civ. 6103, 1995 WL 5895 (N.D.Ill. Jan. 4, 1995))). The Second Circuit ruled in an analogous situation that a governmental defendant's counterclaims did not constitute a "suit" against a plaintiff. *See Cargill Inc. v. Commodity Credit Corp.,* 275 F.2d 745, 748 (2d Cir.1960) ("The statute speaks in terms of 'suits' not of claims. Commodity's counterclaim was part of the suit").

Non–Ferrous argues that *Cargill* is inapposite, as it involved a waiver of sovereign immunity by the United States Government under the Commodity Credit Corporation's Charter Act, 15 U.S.C. § 714. Non–Ferrous observes that the U.S. Government, unlike Non–Ferrous, can "set the terms" of its consent to suit. That observation, however, does not affect the Second Circuit's ruling that there is a distinction between the plain meaning of "suit" and "claim," and that the term "suit" (or "action") includes both claims and counterclaims.

The Seventh Amendment to the Constitution also speaks of "[s]uits at common law" rather than "claims at common law" in "preserv[ing]" the right to a jury. *See* U.S. Const. amend. VII. Therefore, the Second Circuit's holding that the nonjury provision in section 1330(a) is constitutional, *see Ruggiero,* 639 F.2d at 878–79, applies equally to counterclaims asserted by foreign-state defendants within such suits. *See Kaufman,* 593 F.Supp. at 1193 (upholding the constitutionality of section 1330(a) in an action involving counterclaims by a foreign-state defendant); *see also McElrath v. United States,* 102 U.S. 426, 440, 16 Ct.Cl. 630, 26 L.Ed. 189 (1880) (holding that the Seventh Amendment does not govern suits against the United States Government, including counterclaims by the Government, because those suits "are not suits at common law within its true meaning").

---

**5.** In support of their argument that Congress did intend otherwise, the Defendants quote from (1) the FSIA's "declaration of purpose," stating that "Congress finds that the determination by the United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice," 28 U.S.C. § 1602; and (2) a House Report, stating that a "principal purpose of the bill is to transfer the determination of sovereign immunity from the executive branch to the judicial branch," H.R.Rep. No. 94–1487 at 7 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6606. (*See* Defs.' Opp. Mem. at 15). The Court finds that neither of these examples, separately or taken together, shows that Congress intended to exempt counterclaims from the nonjury provision of section 1330(a).

This case is an action against two foreign-state defendants; it is therefore governed in its entirety by section 1330(a). Accordingly, the trial of this case will be held before the Court without a jury with respect to all claims and counterclaims asserted by the parties.

### CONCLUSION

The Court grants Lehman's motion to strike the jury demand in this case. Trial in this case will be before this Court without a jury. The Court hereby gives the parties a firm trial date of Monday, October 29, 2001.

**SO ORDERED.**