Rudolph KERN and Angela Kern, Individually and on behalf of the Estate of Erich Kern, Plaintiffs,

v.

OESTERREICHISCHE ELEKTRIZI-TAETSWIRTSCHAFT AG, Waagner Biro AG, Swoboda Karoserie AG, Baubedarfszentrum Stadlbauer AG, Gletscherbahnen Kaprun AG, ABC Corporations 1–10, John Does 1–10, Defendants.

Ltc (Ret) John S. Habblett, et al., Plaintiffs,

v.

Oesterreichische Elektrizitaetswirtschaft AG, Waagner Biro AG, Swoboda Karoserie AG, Baubedarfszentrum Stadtbauer AG, Gletscherbahnen Kaprun AG, ABC Corporations 1–10, John Does 1–10, Defendants.

Nos. 01 CIV. 264(SAS), 01 CIV. 266(SAS).

United States District Court, S.D. New York.

Nov. 15, 2001.

Robert Swift, Esq., Martin J. D'Urso, Esq., Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Esq., Nagel, Rice, Dreifuss & Mazie LLP, New York City, Edward D. Fagan, Esq., Fagan & Associates, Livingston, NJ, Counsel for Plaintiffs.

Bruce H. Schneider, Esq., Stephanie E. Deaner, Esq., Stroock, Stroock & Lavan LLP, New York City, Counsel for Defendant (OE AG).

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This action arises from the wrongful death of plaintiffs' children and grandchil-

dren in a ski train accident that occurred in Kaprun, Austria in November 2000. Plaintiffs are suing Oesterreichische Elektrizitaetswirtschaft AG ("OE AG") and other corporate and individual defendants. Plaintiffs seek an injunction declaring the ski train and similar trains unsafe and discontinuing their use. They also seek compensatory damages for claims of deception and fraud, design defects and failure to warn, breach of implied warranty, negligence and negligent infliction of emotional distress. Finally, plaintiffs seek punitive damages, attorneys' fees and costs.

OE AG moved to dismiss the action against it on numerous grounds. The parties have since agreed to narrow the focus of the motion to the question of whether the Foreign Sovereign Immunities Act precludes this Court's jurisdiction over OE AG. Plaintiffs thus claim that jurisdiction is proper under 28 U.S.C. §§ 1605(a)(1), (2) (exceptions to foreign sovereign immunity). For the reasons set forth below, OE AG's motion to dismiss on the ground of foreign sovereign immunity is granted.

## I. BACKGROUND

In November 2000, plaintiffs' decedents died in a ski train fire on Kitzsteinhorn mountain in Kaprun, Austria that killed 155 tourists and employees of the ski operation. See OE AG's Annual Report for the Year 2000 ("Annual Report") at 37, Ex. B to Plaintiff's Preliminary Opposition to OE AG's Motion to Dismiss Based on Sovereign Immunity ("Pl.Opp'n.").

### A. The Parties

Plaintiffs John S. Habblett and Suzanne K. Habblett lost their daughter, Jennifer Kirkpatrick Habblett Goodridge, and two grandchildren, Michael and Kyle Goodridge, in the accident. Plaintiffs Rudolf and Angela Kern's son, Erich Kern, also died in the accident. Plaintiffs Dick Baker and Carol Baker, not named in the caption, lost their daughter, Carrie Lynn Baker.

The Habbletts and the Kerns filed separate actions on January 11, 2001, setting forth the same causes of action against numerous defendants including OE AG. See 1/11/01 Habbletts' Complaint; 1/11/01 Kerns' Complaint (both "Complaint" or "Compl."). The Bakers filed a complaint against the same defendants on January 31, 2001, also stating the same causes of action. 1/31/01 Bakers' Complaint (also "Complaint" or "Compl.").

Defendant OE AG (a.k.a. Verbundgesellschaft or Verbund, see Compl. ¶ 13) is an Austrian holding company for a "series of associated companies" in industries ranging from engineering, energy and environmental technology to telecommunications and tourism. Annual Report at 36. The Austrian Republic owns 51% of the shares of OE AG. 8/10/01 OE AG's Answers to Interrogatories ("FSIA Interrog.") No. 1 at 3. OE AG is the largest individual shareholder (45%) in defendant Gletscherbahnen Kaprun Aktiengesellschaft ("GBK"), the Austrian company that directly operated the ski train on Kitzsteinhorn Mountain (the "ski train").[1] See Annual Report at 37; Compl. ¶ 17.

Defendant Waagner Biro AG is an Austrian steel and mechanical engineering corporation, which allegedly designed, built and maintained the ski train. See Compl. ¶ 14. Defendant Swoboda Karoserie AG is an Austrian corporation that allegedly provided certain repair services for the train.

---

1. Plaintiffs allege that OE AG "owns the mountain which the Tunnel and the Train pass through" and "owned, controlled and or [sic] supervised operation of the Train and/or Tunnel." Compl. ¶ 13; see also Part II.C., infra (refusing to accept these conclusory allegations).

*See id.* ¶ 15. Defendant Baubedarfszentrum Stadlbauer AG, which plaintiffs allege owns a controlling share of defendant Swoboda Karoserie AG, is allegedly one of Austria's leading wholesalers and retailers of building material, tiles and safety devices. *See id.* ¶ 16. Defendants ABC Corporations 1–10, and John Does 1–10, are "fictitious names for individuals and corporations whose actual identity [sic] is as of yet unknown, but will be identified through discovery." *Id.* ¶ 18.

## B. Related Non–Parties and Events

Various other entities and events are relevant in this action. Austrian Hydro Power AG ("AHP") is an Austrian company that is 85%-owned by OE AG. *See* OE AG's Motion to Dismiss on FSIA Grounds ("Def.Mot.") at 2. During the past few years, AHP transacted a series of nine cross-border leases which closed in New York and in which OE AG served as guarantor (the "leasing transactions"). *See* FSIA Interrog. No. 15 at 21; *see also* Part II.A.2, *infra.* The leases contain provisions waiving sovereign immunity for disputes arising from the agreements, and agreeing to the application of New York law. *See id.*

Tauern Touristik GmbH ("TT") is one of OE AG's wholly-owned subsidiaries. *See* Annual Report at 37. TT carries out "marketing and utilization" for OE AG's tourism business. *Id.* Plaintiffs allege that TT marketed Austrian skiing in the United States, and that this marketing induced plaintiffs' relatives to ski in Kaprun, Austria. *See* Pl. Opp'n. at 9. Plaintiffs further allege that OE AG funded TT's marketing efforts in the United States. *Id.* OE AG has denied that it funded any of TT's advertising or promotional efforts in the United States. *See* FSIA Interrog. No. 12 at 18.

## C. Procedural History

When it became apparent that OE AG planned to rely on a sovereign immunity defense, plaintiffs sought jurisdictional discovery on that issue. This Court ordered that OE AG provide to Magistrate Judge Theodore Katz for *in camera* review the following items: (1) the table of contents for the closing binders relating to certain leasing transactions, (2) the intended use provisions of the governing agreements, and (3) any forum selection, choice of law or immunity waiver clauses in the closing binders of each transaction. *See* 9/10/01 Amended Discovery Order ("9/10/01 Discovery Order"); 8/29/01 Transcript at 29–30. In addition, the Court ordered that OE AG provide a sworn statement as to whether OE AG had funded any promotional activities of Austrian skiing or hiking in the United States, and whether OE AG provided funding to TT for promoting Austrian skiing or hiking in the United States. *See* 9/10/01 Discovery Order at 2.

Judge Katz received briefs and opposition papers relating to the discovery order, and granted further limited discovery of materials relating to the leasing transactions that closed in New York during 1999–2001. *See* 10/11/01 Order of Magistrate Judge Theodore Katz ("10/11 Katz Order") at 1. Judge Katz subsequently reviewed the materials and concluded that none of the information provided any support for plaintiffs' theory that the funds derived from the leasing transactions were intended to fund skiing activities at the site of the accident. *See* 10/23/01 Order of Magistrate Judge Theodore Katz ("10/23 Katz Order") at 2. He ordered that OE AG was not required to produce any additional discovery related to the issue of its sovereign immunity. *See id.*

Finally, Judge Katz addressed the remaining question raised by plaintiffs,

*see* 10/30/01 Letter from Jay J. Rice, Plaintiffs' Counsel, to Magistrate Judge Katz ("Pl. 10/30 Ltr."), as to whether the additional documentation provided by OE AG established or implied any relationship between funds derived from the leasing transactions and the skiing activities in the suit. *Id.* Judge Katz answered "no." 11/01/01 Endorsement by Magistrate Judge Katz to Pl. 10/30 Ltr.[2]

## II. DISCUSSION

### A. Subject Matter Jurisdiction under FSIA

#### 1. Legal Standard

▮▮ The Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330,[3] 1602–1611 (the "Act" or "FSIA"), supplies "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989)). Foreign sovereigns, as well as their agencies and instrumentalities, are immune from suit in American courts unless one of several narrowly-defined exceptions applies. *See id.* at § 1604 (stating general rule that "a foreign state shall be immune from the jurisdiction of the courts of the United States ... except as provided in sections 1605 to 1607 of this chapter."). In any other case against a foreign sovereign,

an agency or instrumentality, a federal court lacks subject matter jurisdiction over the suit. *Nelson,* 507 U.S. at 355, 113 S.Ct. 1471 (citing *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 488–489, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)).

Plaintiffs claim that this Court has jurisdiction because the matter comes under either or both of two exceptions to the FSIA's grant of immunity. *First,* plaintiffs claim that the waiver exception applies. *See* Pl. Opp'n. at 5. Under the Act, a foreign sovereign can waive immunity either explicitly or implicitly. 28 U.S.C. § 1605(a)(1). *Second,* plaintiffs claim that the "commercial activity" exception applies. *See* Pl. Opp'n. at 7. The Act deprives a foreign sovereign of immunity in a suit

> based upon *[1] a commercial activity carried on in the United States by the foreign state; or upon [2] an act performed in the United States in connection with a commercial activity of a foreign state elsewhere; or* upon [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (emphasis added). Plaintiffs contend that either the first or second clause of the provision applies.[4] Pl. Opp'n. at 5. Both clauses require OE AG to have performed an act or activity in the United States that is commercial in nature,

**2.** This Court defers to a magistrate judge's order unless the order is clearly erroneous or contrary to law. *Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.,* No. 93 Civ. 5375, 1996 WL 675772, at *1 (S.D.N.Y. Nov.21, 1996). The party seeking to modify or set aside an order of a magistrate judge carries a heavy burden. *Id.* In any event, plaintiffs do not argue that the Magistrate Judge's Order is erroneous or contrary to law.

**3.** Section 1330(a) provides:

> The district courts shall have original jurisdiction without regard to the amount in controversy of any nonjury civil action against a foreign state ... as to any claim for relief ... with respect to which the foreign state is not entitled to immunity under sections 1605–1607 of this title.

**4.** Plaintiffs do not maintain that their case satisfies the "direct effect" requirement in the third clause and therefore rely on the first two clauses of section 1603(a)(2).

and that plaintiffs' wrongful death suit be based upon that act or activity. *See* 28 U.S.C. §§ 1603(d), 1605(a)(2).

 Plaintiffs are incorrect in their assertion that it is defendant's burden to prove that none of the exceptions to immunity applies. Pl. Opp'n. at 5. To the contrary, once defendant has made the prima facie showing that it is a foreign sovereign, *plaintiffs* have the burden of going forward with evidence to show that one of the exceptions to immunity applies. *See Cargill Int'l. S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993) (emphasis added). Ultimately, the burden of persuasion rests with the defendant. *Id.* (citing *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n. 6 (5th Cir.1989)). Of course, defendant must establish that it is entitled to dismissal. Here, plaintiffs have failed to prove that an FSIA exception applies.

## 2. Analysis

 OE AG qualifies as a foreign state under section 1603 of the FSIA.[5] The Act provides that "foreign states" shall be immune from the jurisdiction of the courts of the United States. 28 U.S.C. §§ 1604. The definition of "foreign state" sweeps broadly to include a political subdivision of a state, or an agency or instrumentality of a foreign state. *Id.* §§ 1603(a), (b); *see also Gates v. Victor Fine Foods*, 54 F.3d 1457, 1460 (9th Cir.1995) ("Congress intended the terms 'organ' and 'agency or instrumentality' to be read broadly."). Section 1603 of the Act provides that an

agency or instrumentality of a foreign state includes a separate corporate person, a majority of whose shares is owned by a foreign state. *Id.* §§ 1603(b)(1), (2). Because the Austrian government owns 51% of OE AG's voting shares as is required by Austrian constitutional law, defendant has met its prima facie burden of proving that it is a foreign state for purposes of the Act. *See* 8/10/01 OE AG's Answers to Interrogatories ("FSIA Interrog.") No. 1 at 3. As a sovereign entity under the Act, OE AG is immune from suit in American courts unless one of the statutory exceptions applies.

### a. Waiver Exception

 Plaintiffs claim that OE AG has waived immunity in a series of leasing transactions. *See, e.g.*, 1999 Guaranty Agreement (ODW 1999–I), OE AG as Guarantor for Oesterreichische Donaukraftwerker ("OD AG") ("Guaranty Agreement"),[6] Ex. C[7] to Pl. Opp'n; *see also* Part I.B., *infra.* In the Guaranty Agreement, OE AG guarantees the obligations of OD AG, *see* Guaranty Agreement at 1, a wholly-owned subsidiary of AHP. *See* Annual Report at 64.[8] OE AG explicitly waived immunity to suit by the contracting parties in federal or New York state court for disputes arising out of the Agreement or its subject matter, and agreed to the application of New York law. *See id.* §§ 1(1), (j). Plaintiffs do not allege that they were signatories to the agreement, nor would that be a reasonable inference from the

---

**5.** Plaintiffs cite no authority to the contrary.

**6.** This Guaranty Agreement is assumed to be representative of the others in the series because it is "substantially similar to the other documents produced thus far." Pl. Opp'n. at 3.

**7.** Exhibit C also includes two letters from Martin D'Urso, plaintiffs' counsel, dated Sep-

tember 17 and September 27, 2001, respectively.

**8.** It appears that this is the reason why defendant refers to the leasing transactions as "AHP leasing transactions." Def. Mot. at 10. Plaintiffs refer instead to the "New York-based leaseback transactions." Pl. Opp'n. at 6.

facts that plaintiffs do allege. Plaintiffs therefore cannot claim that OE AG explicitly waived its immunity to this wrongful death suit in the Guaranty Agreement.

 Nor did OE AG implicitly waive its immunity to this suit. Courts are to construe the implied waiver exception to the FSIA's grant of immunity in section 1605(a)(1) narrowly. *See Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 391 (2d Cir.2000); *Cargill*, 991 F.2d at 1017; *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991) ("Federal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly."). Waiver of immunity may be implied in cases where a foreign state has agreed to arbitration in another country, or agreed that the law of a particular country should govern a contract or where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity. *See Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir.1996) (citing H.R.Rep. No. 94–1487, at 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617; *see also Gates*, 54 F.3d at 1465 (construing Congress's remarks to mean that "generally speaking, implicit waivers are found only [in one of the three listed situations].").

Plaintiffs argue that because OE AG has explicitly waived immunity to suit in the United States in favor of some parties, it has shown the subjective intent required for an implied waiver as to plaintiffs. *See* Pl. Opp'n. at 6. Plaintiffs point to the provisions in the Guaranty Agreement waiving immunity from suit in U.S. courts and agreeing to the application of New York law. Guaranty Agreement §§ 1(j), (1). Plaintiffs argue that if they were to learn

the subject matter of the Guaranty Agreement, and the identities of all of the co-signing parties, that they might be able to mount an argument that OE AG had implicitly waived immunity to this wrongful death action. *See* Pl. Opp'n. 6–7; 9/17/01 Letter from Martin D'Urso to Bruce Schneider and Stephanie Deaner (OE AG's counsel) ("9/17 D'Urso Letter"), Ex. C to Pl. Opp'n. However, Judge Katz has denied plaintiffs' request to disclose the identities of other co-signing parties, and has closed discovery. *See* 10/11 Katz Order at 2; 10/23 Katz Order.

The cases plaintiffs cite to support their contention that OE AG has impliedly waived immunity as to their suit are inapposite. In *Seetransport Co. v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993), the Second Circuit interpreted 28 U.S.C. § 1605(a)(6), the arbitration exception, which provides that a foreign state is not immune from suit in which an action is brought to enforce an agreement or arbitration award.[9] *Seetransport* holds that where a foreign state enters into a contract which contains an arbitration clause, and subsequently submits to an arbitration in which an award is issued against one party, the state is deemed to have waived its immunity as to an enforcement lawsuit based on that award. *Id.* at 578–79; *see also Transatlantic*, 204 F.3d at 391 (distinguishing *Seetransport* as a case involving a "direct appeal of [an] arbitral award" and therefore illustrating the narrowness of the waiver exception). *Cargill*, another case plaintiffs cite to support their waiver argument, is similarly distinguishable. In *Cargill*, the court held that a purchaser, an arguable intended third-party beneficiary to a shipping contract, could not invoke the waiver provision in the contract between the seller and the shipper. *Cargill*, 991 F.2d at 1017–18. Plaintiffs cannot make

---

9. Neither party claims that the arbitration exception itself applies to this case.

the argument that they are intended third-party beneficiaries with respect to the Guaranty Agreement. *See* 10/23 Katz Order at 2 (concluding that an *in camera* review of Guaranty Agreement provided no support for plaintiffs' position). Moreover, the holding in *Cargill* would preclude plaintiffs from invoking the waiver provision unless they were signatories to the contract. *Id.* at 1017 (warning that "a broader interpretation would result in a vast increase in the jurisdiction of the federal courts over matters involving sensitive foreign relations") (quotation marks and citation omitted).

Plaintiffs' final argument for an implied waiver resulting from OE AG's acting as guarantor for AHP (OD AG) in the leasing transactions is that "it would be a terribly unjust decision to permit OE AG to waive sovereign immunity in order to gain U.S. financing for its operations but to re-assert the same immunity when its operations prove fatal to New Yorkers." Pl. Opp'n. at 7.[10] This calculated appeal to the Court's sympathy must nonetheless fail. A company's waiver to obtain financing in the United States for general corporate purposes does not share the requisite nexus to personal injuries caused by the operation of a ski train. *See Gates,* 54 F.3d at 1465–66 (rejecting argument that foreign state's waiver of immunity in conjunction with U.S. loan transactions extended to unrelated suit because such transactions funded company's general operations).[11] Plaintiffs' reading of the exception would eviscerate the statute's broad grant of immunity by subjecting a foreign state to any suit in the United States if it ever received funding in a transaction conducted in the United States. *See id.* ("[T]he [plaintiffs']

theory seems to be that if a foreign state enters into one agreement as to which it waives immunity, then the foreign state has implicitly waived immunity for all of its other transactions, regardless of how unrelated the transactions are to one another. Such a theory does not comport with the narrow construction that the waiver exception must receive.").

Furthermore, even if OE AG's sole purpose in guaranteeing the New York leasing transactions was to fund the ski train in Kaprun, this does not imply a waiver of sovereign immunity from suit for personal injuries caused by the ski train. *See Keller v. Transportes Aereos Militares Ecuadorianos,* 601 F.Supp. 787 (D.D.C.1985)(holding that aircraft owner who waived immunity in aircraft financing agreement did not thereby waive immunity to tort action when that aircraft crashed). Finally, plaintiffs fail to cite a single case under section 1605(a)(1) or any provision of the FSIA in which a court construed a contractual provision waiving immunity to disputes arising from the contract or transaction itself to imply waiver as to personal injury or wrongful death lawsuit.

#### b. Commercial Activity Exception

The commercial activities exception to sovereign immunity under the FSIA subjects a state to the jurisdiction of the United States courts as to an action based upon its commercial activity, "if such activity relates to the United States in one of the ways delineated by the three clauses of 28 U.S.C. § 1605(a)(2)." *Shapiro,* 930 F.2d at 1018. Plaintiffs rely on the first and second clauses of section 1605(a)(2), *see* Part II.A.1., *supra,* which deprive a

---

**10.** This argument also pertains to the commercial activity exception, section 1605(a)(2) of the Act, *see* Part II.A.2.b, *infra,* and fails as to both exceptions.

**11.** *See* Part II.C., *infra* (discussing defendant's objections based on the separate corporate identity of AHP).

foreign state of immunity where the action is "based upon a commercial activity carried on in the United States by the foreign state; or [based upon] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere [.]" 28 U.S.C. § 1605(a)(2).

Relying on the same financial transaction, *see* Part II.B.2., *supra*, plaintiffs also contend that the Guaranty Agreement provides a basis for their wrongful death suit under the commercial activity exception in section 1605(a)(2) of the Act. *See* Pl. Opp'n. at 8–9. Plaintiffs seek additional discovery of the redacted Guaranty Agreement in order to bolster their commercial activity argument. *See id.* at 4. Because Judge Katz has ordered jurisdictional discovery closed, *see* 10/23 Katz Order, plaintiffs are left with the argument that their suit is based on OE AG's obtaining funds in the U.S. for general corporate purposes,[12] and that therefore the lawsuit comes within the commercial activity exception in section 1605(a)(2) of the Act.

 While it is indisputable that the leasing transactions in the United States are commercial in nature, that is only part of the test. For defendant to be deprived of immunity in this lawsuit, plaintiffs must show that their injury is "based upon" OE AG's commercial activity in the United States. They have not done this. "At a minimum, ['based upon'] implies a causal relationship." *Transatlantic Shiffahrtskontor v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir.2000)(Calabresi, J.)(devoting two pages of text to construc-

tion of "based upon" in 28 U.S.C. § 1605(a)(2)); *see also Nelson*, 507 U.S. at 356–57, 113 S.Ct. 1471 (defining "based upon" as "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case"); *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1333 (2d Cir.1990)(stating that "based upon" requires that the act or activity performed in the United States must have "caused or contributed to" the immediate facts giving rise to the suit). Courts have held that where a close causal relationship does not exist between the plaintiff's claims and the foreign state's alleged act, the court lacked jurisdiction. *See, e.g., Transatlantic*, 204 F.3d at 388. The court in *Transatlantic* emphasized that the causal requirement in the statute was even more stringent than that of proximate cause in common law. *Id.* at 390. Clearly, OE AG's obtaining funds in the United States for its subsidiary's operations[13] cannot even be argued to be the proximate cause of the ski train accident, much less satisfy any greater causal requirement. *See id.; Filus*, 907 F.2d at 1333.

Plaintiffs dramatically misconstrue the commercial exception to foreign sovereign immunity by conflating the "connection" and "based upon" requirements. The second clause of section 1605(a)(2) lifts immunity where suit is based upon "an act performed in the United States *in connection with* a commercial activity of the foreign state elsewhere." 28 U.S.C.

---

12. OE AG did not receive funds from the transactions which raised money for its subsidiary, AHP. *See* FSIA Interrog. no. 4; Def. Mot. at 6 n. 3. Because the suit is not based upon the Guaranty Agreement or any of the lease-back transactions, the Court need not delve into a corporate veil-piercing analysis to determine whether OE AG controlled AHP or was its alter ego.

13. The same would be true even if OE AG had itself received the funds from the leasing transactions, which OE AG contends it did not. *See* Def. Mot. at 6, 8 ("[T]he proceeds of those transactions went to AHP whose assets were the subject of the leases."); *see also* note 10, *supra* (explaining the decision not to engage in a veil-piercing analysis).

§ 1605(a)(2)(emphasis added). That language requires that there be a connection between the financing or promotional activity in the U.S. and the ski train operation abroad. Plaintiffs seek to substitute the mere "connection" requirement from that part of the statute, for the stringent nexus required by the "based upon" language. *See Nelson,* 507 U.S. at 356–57, 113 S.Ct. 1471, and *Transatlantic,* 204 F.3d at 390 (defining "based upon" in the context of the FSIA). They assert that "FSIA commercial exceptions often have been based on the foreign sovereigns' efforts to raise money in the U.S. so long as there is a *connection* ... between the investment and the injury." Pl. Opp'n. at 8 (emphasis added). Unfortunately for plaintiffs, the injury must be *based upon* the "investment" or financial activity, not just share a connection with it or to it. Moreover, because the wrongful death of plaintiffs' decedents had no connection to the Guaranty Agreement, plaintiffs fail to prove the commercial activity exception even under their understanding of the test.

Plaintiffs are mistaken where they read the commercial activity exception to require less than a causal relationship between the financial activity and the injury. The cases plaintiffs cite in order to illustrate "a connection ... between the investment and the injury," involve lawsuits that were actually based upon the financial activity in question, as required by section 1605(a)(2). In *Shapiro,* an American sued Bolivia seeking to enforce a promissory note that Bolivia refused to pay. *Shapiro,* 930 F.2d at 1014. Obviously, the "based upon" requirement was satisfied: The "issuance of the Notes" was "the overall activity giving rise to this claim." *Id.* at 1018. *Carl Marks & Co. v. U.S.S.R.,* 841 F.2d 26 (2d Cir.1988), involved an action

brought against the Soviet Union to recover on debt instruments issued by the Russian Imperial government in 1916. The suit to recover the principal of the bonds was "based upon" Russia's issuance of public debt in the United States and therefore came within the commercial activity exception to immunity. *See id.* at 27 (dismissing complaint because unfair to apply retroactively modern theory of sovereign immunity to Russia's activity in 1916.) Both *Shapiro* and *Carl Marks* illustrate the intended operation of section 1605(a)(2)—where a foreign state acts as a private person and effects a business transaction in the United States, it will not be heard to object later if it is sued on the transaction in an American court. In short, the suit must be *based upon* the act performed in the United States, which in turn shares a *connection* with the commercial activity conducted elsewhere. *See* 28 U.S.C. § 1605(a)(2), cl. 2.

Plaintiffs rely upon a second "act" to bring the defendant within the statutory language. Plaintiffs contend that TT, OE AG's wholly-owned subsidiary, promoted Austrian skiing and hiking in the United States. *See* Pl. Opp'n. at 8–9. Plaintiffs argue that they need additional discovery to prove that this act induced plaintiffs' decedents to ski in Kaprun, Austria, and caused or contributed to their death in the ski train fire. *See id.* However, even if plaintiffs could offer evidence to prove these facts, they are pursuing the wrong defendant because OE AG is a different entity than its subsidiary TT,[14] and plaintiffs have not alleged that OE AG is the alter ego of TT.

Plaintiffs argue that OE AG may have directly funded TT's promotional activities in the United States. *See id.* at 9–10.

---

**14.** A subsidiary, though wholly-owned, is nevertheless a separate corporate entity from its parent for purposes of liability, unless a showing to the contrary is made.

However, plaintiffs have already made that inquiry and come up with nothing. *See* FSIA Interrog. No. 12 at 18 (answering that OE AG has not funded *any* marketing or advertising effort in the United States, except that OE AG makes its Internet home page, which mentions tourism, available in English)(emphasis added). Plaintiffs now request depositions "to test [OE AG's] conclusory assertions [regarding funds given to TT]." Pl. Opp'n. at 10. As noted earlier, Judge Katz has closed jurisdictional discovery, *see* 10/23/01 Katz Order, and there is no assertion that Judge Katz acted erroneously or contrary to law. *See Pkfinans*, 1996 WL 675772, at *1.

■ Plaintiffs' final argument for the commercial activity exception relies on the fact that OE AG markets and sells American Depository Receipts (ADRs) to investors in the United States. However, this argument fails because plaintiffs' suit is certainly not based on that activity. The deaths in Austria are no more based on that capital-raising activity than they are on the leasing transactions.

### B. Rule 56 Versus Rule 12

■ OE AG's motion is to be treated as a motion to dismiss rather than as a motion for summary judgment. Because the parties have submitted evidentiary materials outside of the pleadings on which to assist the court in deciding this issue, plaintiffs beseech this Court to consider OE AG's motion as one for summary judgment in the hope that the Court will then allow plaintiff additional discovery. It is well-established that a district court may refer to evidence outside the pleadings to resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000); *Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.

2000); *Sheahan v. Brady*, 866 F.Supp. 770, 771 (S.D.N.Y.1994). A party may seek limited discovery on the issue of jurisdiction. *See Filus*, 907 F.2d at 1332. Plaintiffs' strategy in requesting jurisdictional discovery, then pointing to the court's consideration of it as grounds for converting the motion into one for summary judgment in order to obtain further discovery, fails if the limit on jurisdictional discovery is to have any meaning.

### C. Motion to Dismiss

### 1. Legal Standard

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where " 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim that would entitle [them] to relief.' " *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 220–21 (2d Cir. 2001) (quoting *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999)). "At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998) (quotation marks omitted)). The task of the court in ruling on a Rule 12(b)(6) motion is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Sims*, 230 F.3d at 20 (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (quotation marks omitted)).

To rule properly on a Rule 12(b)(6) motion, the court must accept as true all material facts alleged in the complaint and

draw all reasonable inferences in the non-moving party's favor.[15] *See ICOM Holding*, 238 F.3d 219, 220–21. Nevertheless, "[t]o survive a motion to dismiss, [plaintiffs'] claims must be 'supported by specific and detailed factual allegations' not stated 'in wholly conclusory terms.'" *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir.2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)).

## 2. Analysis

■■■ The Court is under no obligation to accept conclusory allegations as true, *see Friedl*, 210 F.3d at 85–86, and may instead find jurisdictional facts. *See, e.g., Robinson v. Government of Malaysia*, 269 F.3d 133, 147–48 (2d Cir. 2001)(Sotomayor, concurring)(explaining that when a plaintiff alleges that a foreign state waived its immunity and defendant contests that allegation in a Rule 12(b)(1) motion, "[t]he district court would then have to resolve [the] issue of fact as a jurisdictional matter."). Plaintiffs allege that defendant OE AG owned and controlled the train and tunnel at the time of the accident. *See* Compl. ¶ 13. OE AG's Annual Report indicates that GBK owned and controlled the train and tunnel. *See* Annual Report at 37; *see also* Compl. ¶ 13 (stating same); Pl. Mot. at 2 (same). Plaintiffs appear to argue that because OE AG owns a control-ling share of GBK, OE AG also owns and controls the train and tunnel. *See id.* Because the plaintiffs do not argue that OE AG is the alter ego of GBK, OE AG did not own or control the train or tunnel. In fact, plaintiffs have offered nothing to show that OE AG acted as the alter ego of any of its subsidiaries. Without that showing, plaintiffs may not pierce the corporate veil to hold OE AG liable for any tort committed by its subsidiaries AHP, TT, or GBK.[16]

The Court accepts as true, for the purposes of this motion, that the tunnel was of inadequate width, lighting, ventilation, escape routes, emergency equipment, fire precautions, et cetera, that the train was defectively designed, built, constructed and maintained, and that it also suffered from numerous defects such as inadequate safety equipment. *See* Compl. ¶¶ 38–40. The Court also accepts that if there had been proper exits in the train and adequate routes for escape from the tunnel, that one or all of plaintiffs' decedents would have survived. *Id.* ¶ 59. Finally, the Court accepts as true plaintiffs' allegations that the families of the victims have suffered increased grief due to OE AG's frustration of their investigation, and lack of concern and compassion. *Id.* ¶¶ 64–66.

Even if plaintiffs can prove negligence,[17] OE AG is still immune from suit. Plain-

---

**15.** In deciding a Rule 12(b)(6) motion, a court should consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993). *See also Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999).

**16.** Even if OE AG owned or controlled the tunnel, this would not change the fact that OE AG did not impliedly waive suit either under the waiver or commercial activity exception. *See* Part II, *supra.*

**17.** Plaintiffs also seek declaratory relief, as well as damages for fraud and deception, design defects, implied breach of warranty, and negligent infliction of emotional distress. *See* Compl. ¶¶ 67–108. However, all claims derive from the same underlying allegation of defendants' negligence with respect to the conditions of the ski train and tunnel in November 2000. *See id.* ¶¶ 19–66. Only the negligence claim was discussed for the purposes of this motion, but the dismissal is as to all claims.

tiffs have not sustained their burden of showing that OE AG has waived immunity under either section 1605(a)(1) or 1605(a)(2) of the Act.

## III. CONCLUSION

OE AG's motion to dismiss is hereby granted for lack of subject matter jurisdiction. All additional requests for jurisdictional discovery as to OE AG are hereby denied.

SO ORDERED: