**IN RE SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000**

**This Document Relates To: Defendant Gletscherbahnen Kaprun AG**

**No. MDL No. 1428 (SAS).**

United States District Court, S.D. New York.

March 19, 2002.

Robert Swift, Martin J. D'Urso, Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Nagel, Rice, Dreifuss & Mazie LLP, Edward D. Fagan, Fagan & Associates, Livingston, NJ, Kenneth Nolan, Christina Frye, Speiser, Krause, Nolan & Granito, New York City, for Plaintiffs.

Robert A. Weiner, McDermott, Will & Emery, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This action arises from the alleged wrongful death of plaintiffs' children and grandchildren in a ski train accident that occurred in Kaprun, Austria in November 2000. *See Kern v. Oesterreichische Elektrizitaetswirtschaft Ag*, 178 F.Supp.2d 367, 367 (S.D.N.Y.2001). Plaintiffs are suing Gletscherbahnen Kaprun AG ("GBK"), an Austrian ski resort operator, among other corporate and individual defendants, seeking compensatory and punitive damages as well as injunctive relief.[1]

---

1. Pursuant to 28 U.S.C. § 1407, these actions were transferred to and consolidated for pretrial purposes before this Court under the name *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 175 F.Supp.2d 1379 (2001).

GBK now moves to dismiss this action pursuant to the Foreign Sovereign Immunity Act of 1976 ("the Act" or "FSIA"), 28 U.S.C. §§ 1330(a), 1602–1611, because the Austrian government indirectly owns a majority of its shares. For the reasons set forth below, GBK's motion to dismiss is denied.

## I. BACKGROUND

■ GBK is a private company that owns the ski resort located on Kitzsteinhorn Mountain in Kaprun, Austria. *See* Declaration of Johann Peter Praäuer, Managing Director at GBK ("Praäuer Decl.") ¶ 4. It also owns and operates the ski train and tunnel involved in the accident. *See id.* Plaintiffs allege that GBK is responsible for train and tunnel defects that caused the death of their family members. *See* 12/21/01 Consolidated Amended Complaint ¶¶ 98–101. GBK's parent corporation, Oesterreichische Elektrizitaetswirtschaft AG ("OE AG"), an Austrian power generation and tourism conglomerate, owns 45% of GBK's shares.[2] *See* Praäuer Decl. ¶ 5. Gemeinde Kaprun ("Village of Kaprun") owns 33.98%. *See id.*[3]

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Generally

■ "The court properly dismisses a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Tasini v. New York Times Co.,* 184 F.Supp.2d 350, 353 (S.D.N.Y.2002) (quotations, alterations omitted). Plaintiffs bear the burden of proving, by a preponderance of the evidence, that this Court has subject matter jurisdiction over their case. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

■ When faced with a Rule 12(b)(1) motion that contains a factual challenge, a court may draw jurisdictional facts from the complaint, affidavits and exhibits submitted by the parties. *See Robinson v. Government of Malaysia,* 269 F.3d 133, 140 (2d Cir.2001); *Kline v. Kaneko,* 685 F.Supp. 386, 389–90 (S.D.N.Y.1988). If the defendant challenges only the legal sufficiency of plaintiffs' jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiffs. *See Robinson,* 269 F.3d at 140; *Tasini,* 184 F.Supp.2d 350, at 353; *Virtual Countries, Inc. v. Republic of South Africa,* 148 F.Supp.2d 256, 262 (S.D.N.Y.2001). Although the only challenge here is legal in nature, defendant's declaration regarding its shareholder composition is cited because when "evidence relevant to the jurisdictional question is before the court, the district court may refer to that evidence." *Robinson,* 269 F.3d at 140 (quotation marks, citation and alterations omitted).

### B. Rule 12(b)(1) in FSIA Context

■ Because " 'sovereign immunity is immunity from suit, not just from liability,'

---

**2.** Plaintiffs claim that OE AG did not own any stock in GBK at the time of the alleged negligent acts, namely the construction of the tunnel and train and the safety systems. *See* Plaintiffs' Opposition to GBK's Motion to Dismiss on Grounds of Foreign Sovereign Immunity ("Pl.Opp.") at 4 n. 1. Even if true, this is irrelevant because the FSIA applies to a party's status at the time of suit. *See Straub v. A.P. Green, Inc.,* 38 F.3d 448, 451 (9th Cir.

1994); *Belgrade v. Sidex Int'l Furniture Corp.,* 2 F.Supp.2d 407, 413 (S.D.N.Y.1998).

**3.** The following entities own the remainder of GBK: (1) Kapruner Promotion und Lifte GmbH, a private marketing company, and Fremdenverkehrsverband Kaprun, the Village of Kaprun's tourism organization, each own approximately 7% of the company; and (2) the remaining 7% is owned by various other private entities. *See* Praäuer Decl. ¶ 5.

a motion to dismiss based on an assertion of foreign sovereign immunity has particular significance because of the necessity of resolving that issue early on if possible." *Robinson*, 269 F.3d at 141 (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994)). Sovereign immunity " 'is effectively lost if a case is erroneously permitted to go to trial.' " *Id.* at 142 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (alterations added)).

 The FSIA provides the sole basis for a federal court's subject matter jurisdiction over a suit against a foreign sovereign. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993); *Wasserstein Perella Emerging Mkts. Fin. LP v. Province of Formosa*, No. 97 Civ. 793, 2000 WL 573231, at *1 (S.D.N.Y. May 11, 2000). Subject matter jurisdiction exists over matters involving foreign states wherever an exception deprives the foreign state of immunity, or where an international agreement applies. *See* 28 U.S.C. § 1330(a). Once the defendant presents a prima facie case that it is a foreign state as defined by the Act, 28 U.S.C. § 1603, it is presumptively immune and the burden shifts to plaintiffs to go forward with evidence showing that an exception applies. *See Cargill Int'l SA v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993); *Wasserstein*, 2000 WL 573231, at *4. Where defendant cannot make out a prima facie case that it is a foreign state, the Act does not apply at all and plaintiffs may establish that jurisdiction is proper on some other ground.[4]

## III. DISCUSSION

### A. Introduction

The only issue presented by this motion is whether GBK is an "agency or instrumentality" of a foreign state such that this Court must afford it sovereign immunity. GBK argues that it satisfies the test for agency or instrumentality because it is 45% owned by OE AG, a foreign state, and 33.98% owned by the Village of Kaprun, a political subdivision, for a total of 78.98% ownership by a "foreign state or political subdivision thereof" as required by the Act. 28 U.S.C. § 1603(b).

The dispositive question, therefore, is one of statutory interpretation: whether OE AG (defendant's parent corporation) is a foreign state as the term is used in the definition of agency or instrumentality. *See id.* § 1603(b); *infra* Part II.B. In an opinion issued on November 15, 2001, this Court held that OE AG is immune from suit because it is an agency or instrumentality of a foreign state due to Austria's 51% ownership of its shares. *See Kern*, 178 F.Supp.2d at 373.[5] Agencies and instrumentalities are treated as "foreign states" under the Act. *See* 28 U.S.C. § 1603(a); *Kern*, 178 F.Supp.2d at 373; *infra* Part II.B. GBK thus contends that a "foreign state" owns 45% of its shares. For the reasons below, this argument is rejected.

### B. The Act

The FSIA was enacted in 1976 to "address 'the potential sensitivity of actions against foreign states.' " *Cargill Int'l*, 991 F.2d at 1016 (quoting H.R.Rep. No. 1487, 94th Cong., 2d Sess. 32 (1976), *reprinted*

---

4. If GBK is not a foreign state under the Act, the diversity of citizenship between the parties would give this Court jurisdiction over the matter, assuming that personal jurisdiction exists and effective service of process has been made. *See* 28 U.S.C. § 1332.

5. That decision focused on whether any exceptions existed to OE AG's immunity. *See Kern*, 178 F.Supp.2d at 373–77 (discussing 28 U.S.C. §§ 1605–07).

*in* 1976 U.S.C.C.A.N. 6604, 6631). By conferring immunity on foreign states or providing a right to a federal nonjury trial wherever an exception to immunity applies, the Act "aimed 'to facilitate and depoliticize litigation against foreign states and to minimize irritations in foreign relations arising out of such litigation.'" *Id.* (quoting 1976 U.S.C.C.A.N. at 6634).

"A 'foreign state,' except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a) (emphasis added). In turn, an *"agency or instrumentality"* is defined to

> mean any entity—(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or *a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof,* and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

*Id.* § 1603(b) (emphasis added).

Because it is not disputed that GBK meets requirements (1) and (3) of the definition, the debate centers on the second requirement. GBK can only satisfy the

---

**6.** GBK does not argue that it is an *organ* of a foreign state or political subdivision, the alternative requirement for agency or instrumentality status. *See* 28 U.S.C. § 1603(b)(2).

**7.** Clearly, an agency or instrumentality, such as OE AG, is a foreign state as the term is used in subsection (a). *See* 28 U.S.C. § 1603(a); *supra* Part III.A.

**8.** These courts, and others that endorse this interpretation, rely on two factors. *First,* they state that Congress gave "clear instructions ... to construe 'foreign state' in section 1603(b) in the way that Congress defined it in section 1603(a)." *Lehman Bros. v. Minmetals Int'l Non–Ferrous Metals Trading Co.,* 169

---

second requirement by demonstrating that it is majority-owned by a "foreign state or political subdivision thereof." [6] *Id.*

## C. "Foreign State" as Used to Define Agency or Instrumentality, a.k.a. the Tiering Issue

There is disagreement among the Circuits on the proper interpretation of "foreign state" as the term is used in the definition of agency or instrumentality. *See Patrickson v. Dole Food Co.,* 251 F.3d 795, 807 (9th Cir.2001) (noting Circuit split on this issue). The Fifth and Seventh Circuits have ruled that section 1603(b)(2)'s reference to "foreign state" includes agencies and instrumentalities.[7] *See Delgado v. Shell Oil Co.,* 231 F.3d 165, 176 (5th Cir.2000), *cert. denied,* 532 U.S. 972, 121 S.Ct. 1603, 149 L.Ed.2d 470 (2001); *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994,* 96 F.3d 932, 939–41 (7th Cir.1996). Thus, these courts have held that an entity that is owned by an agency or instrumentality *is* an agency or instrumentality because it is owned by a "foreign state," allowing subsidiaries of state-owned corporations to come within the Act's protection by virtue of indirect, or "tiered," ownership by the actual foreign state.[8] The Ninth Circuit, on the other hand, has held that section

---

F.Supp.2d 186, 191 (S.D.N.Y.2001) (Keenan, J.). *See also Delgado,* 231 F.3d at 175–76; *Roselawn,* 96 F.3d at 939–41. *Second,* these courts cite the FSIA's legislative history and purpose. *See, e.g., Roselawn,* 96 F.3d at 937, 940 (citing H.R.Rep. No. 94–1487, *reprinted at* 1976 U.S.S.C.A.N. 6613, at 6614, to illustrate that Congress intended sovereign immunity protection to be very inclusive); *Musopole v. South African Airways Ltd.,* 172 F.Supp.2d 443, 447–48 (S.D.N.Y.2001) (Kaplan, J.) (cautioning against a "niggardly construction of the provisions defining 'foreign state.'"); *accord Parex Bank v. Russian Savings Bank,* 81 F.Supp.2d 506, 507 (S.D.N.Y.2000) (Sweet, J.).

1603(b)'s use of the term "foreign state" clearly refers to foreign states themselves, not their controlled corporations, thus "limiting an instrumentality to the first tier of ownership: those entities owned directly by the foreign state itself or by a political subdivision." *Patrickson*, 251 F.3d at 807. *See also Gates v. Victor Fine Foods*, 54 F.3d 1457, 1461–63 (9th Cir. 1995).

The Second Circuit has yet to rule on this issue. *See Lehman Bros.*, 169 F.Supp.2d at 190 (stating that the Second Circuit had not yet squarely addressed the question); *United States Fidelity and Guaranty Co. et al. v. Braspetro Oil Svcs. et al.*, No. 97 Civ. 6124, 1999 WL 307666, at *6 (S.D.N.Y.1999) (Koeltl, J.) (same).[9] Courts in this District have also split on this "troublesome issue of statutory construction." *Musopole*, 172 F.Supp.2d at 445–47 (permitting successive tiering). *See also Lehman Bros.*, 169 F.Supp.2d at 190–91 (same); *Parex*, 81 F.Supp.2d at 507 (same). *But see Hyatt Corp. v. Stanton*, 945 F.Supp. 675, 684–89 (S.D.N.Y.1996) (Mukasey, J.) (holding that tiering is impermissible because the statute requires ownership by foreign state proper or political subdivision thereof); *Gardiner Stone Hunter Int'l v. Iberia Lineas Aereas de Espana*, 896 F.Supp. 125, 130 (S.D.N.Y. 1995) (Koeltl, J.) (same).

■ The better interpretation is that the term "foreign state" as used in section 1603(b)(2) does *not* include agencies or instrumentalities but refers solely to foreign states proper. *First*, a circular interpretation of section 1603(b) should be avoided. While section 1603(a) provides that the term foreign state "includes" political subdivisions, agencies and instrumentalities, it does not "equate" foreign state with agency or instrumentality. *Gates*, 54 F.3d at 1461. It is a subtle distinction, but also the only explanation that can be squared with the remainder of section 1603. Thus, reading section 1603(b) to require ownership by a foreign state proper does not cause it to "flatly contradict" section 1603(a). *Lehman Bros.*, 169 F.Supp.2d at 191.

*Second*, the use of "political subdivision thereof" would be superfluous if both political subdivision *and* agency or instrumentality, *see* 28 U.S.C. § 1603(a), were rolled into the phrase "foreign state or political subdivision thereof" in section 1603(b). *See Federal Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1285 n. 12 (3d Cir.1993); *Hyatt*, 945 F.Supp. at 685–86. *But see Parex*, 81 F.Supp.2d at 508 (preferring "superfluity" to "outright contradiction"); *Lehman Bros.*, 169 F.Supp.2d at 191 (same); *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 909 F.Supp. 1083, 1096 (N.D.Ill.1995) (reasoning that

---

**9.** Defendant nevertheless argues that *O'Connell Machinery Co. v. M/V Americana*, 734 F.2d 115, 116 (2d Cir.1984) controls here. *See* Def. Reply at 6 (relying on *Parex*, 81 F.Supp.2d at 507, which cited *O'Connell* for having "touch[ed] upon this issue."). In *O'Connell*, the Second Circuit held that an Italian corporation, Italian Line, was an agency or instrumentality of Italy. *O'Connell*, 734 F.2d at 116. Italian Line was majority-owned by the Italian corporation FINMARE, which in turn was under the direct control of a public financial agency of the Italian government. *See id.* The court based its holding,

however, on a finding that the Italian government had double-tiered its administrative agencies, *see id.*, and therefore that Italian Line was majority owned by a political subdivision of the Italian government. Thus, the entity in *O'Connell* was clearly an agency or instrumentality because "a majority of [its] shares or other ownership interest [was] owned by a ... *political subdivision*." 28 U.S.C. § 1603(b)(2). By contrast, there is no contention here that OE AG is a political subdivision and therefore GBK cannot be majority-owned by a political subdivision.

Congress probably included "political subdivision thereof" for emphasis). The legislative history shows that Congress "seemed exceedingly conscious of the distinction between foreign states, political subdivisions, and agencies or instrumentalities of foreign states or political subdivisions." *Gates,* 54 F.3d at 1462.[10] If Congress had intended to permit majority ownership by a state controlled corporation to give rise to another agency or instrumentality, it "could easily have stated that an entity must be owned by a foreign state, a political subdivision, or an agency or instrumentality of a foreign state or political subdivision." *Id.* It did not.

*Third,* Congress intended to immunize a finite class of foreign governments and their majority-owned businesses because of the affront entailed in hauling a foreign government into court or draining its resources directly by awarding large damages to private litigants. *See Patrickson,* 251 F.3d at 806 (reviewing legislative history). Congress could have, but did not, immunize *every* foreign corporation that is partially state-owned.[11] If the term "foreign state," as used to define agencies or instrumentalities, were to include agencies and instrumentalities, the definition would bring within it a succession of subsidiaries where state control is many times removed and therefore remote at best. *See Hyatt,* 945 F.Supp. at 688; *Braspetro,* 1999 WL 307666, at *6. Commentary on the statute supports the view that, "in light of the attenuated relationship between foreign states proper and many of their corporate subsidiaries," Congress did not intend to grant immunity to corporations beyond the first tier of state ownership. Comment, *The Foreign Sovereign Immunities Act and Corporate Subsidiaries of Agencies or Instrumentalities of Foreign States,* 19 Berkeley J. Int'l L. 350, 353 (2001). *See also* Comment, *Tiered Entities and Sovereign Privileges Under the Foreign Sovereign Immunities Act,* 34 San Diego L.Rev. 1817, 1820 (1997) (arguing that the language and policies of the FSIA do not support tiering); Note, *Wipe Away the Tiers: Determining Agency or Instrumentality Status Under the Foreign Sovereign Immunities Act,* 31 Ga. L.Rev. 1121, 1124 (1997) ("[T]iering is inconsistent with ... the very policies that gave rise to the Act.").

### D. GBK's Status

■ While GBK's parent corporation OE AG is afforded protection as a "foreign state" because it is an agency or instrumentality of Austria, *see* 28 U.S.C. § 1603(a); *Kern,* 178 F.Supp.2d at 373, it is not a "foreign state or political subdivision thereof," 28 U.S.C. § 1603(b). As a result, GBK cannot satisfy the second prong of the Act's definition of agency or instrumentality, *see* 28 U.S.C. § 1603(b)(2), which requires majority ownership by a foreign state or political subdivision. The

---

**10.** In addition, the phrase "foreign state or political subdivision thereof" in subsection (b) clearly signals that Congress intended the term foreign state, in this context, to mean a foreign nation or foreign government because only nations or governments can have political subdivisions. Because political subdivision is defined as any unit of government beneath the central government, *see* H.R.Rep. No. 94-1487, 1976 U.S.C.C.A.N. 6613, 6614, it is unlikely that the legislature intended, without explanation, agencies and instrumentalities to have political subdivisions.

**11.** *Musopole,* 172 F.Supp.2d at 446-47, warned that anything other than the broadest reading of the FSIA "could render the Act inapplicable even where foreign government interest in the entity before the Court could have substantial foreign policy implications." *Id.* This interpretation ignores the fact that private suit against *any* large foreign corporation could implicate foreign policy.

Village of Kaprun, arguably a political sub-division of Austria, owns only a minority of GBK's shares.[12] Because GBK does not otherwise qualify under the Act for protection as a foreign state, it is not immune.

## IV. CONCLUSION

For the foregoing reasons, GBK's motion to dismiss on the ground of foreign sovereign immunity is denied.

SO ORDERED:

12. GBK relies on *Credit Lyonnais v. Getty Square Assocs.*, 876 F.Supp. 517, 519–20 (S.D.N.Y.1995), to argue that this Court must pool OE AG's interest with the Village of Kaprun's to hold that GBK is an agency or instrumentality. There, the court held that a corporation 48% owned by France and 8.67% owned by a corporation that was 99.97% owned by France, was an agency or instrumentality. *See Credit Lyonnais*, 876 F.Supp. at 519–20. Noting that pooling two or more foreign states' ownership interests is relatively well-accepted, the court reasoned that pooling two ownership interests of the *same* state was acceptable. *See id.* at 520. In contrast to *Credit Lyonnais*, however, Austria does not directly own any of GBK's shares.

Further, *Credit Lyonnais* is wrongly decided, in my view, to the extent it pools the 8.67% ownership interest. Whereas the pooling of several political subdivisions' ownership interests, or of one interest of the foreign state proper plus an interest of one or more of its subdivisions, may be acceptable, the ownership interest of an agency or instrumentality does not apply towards the aggregate state ownership of the entity. I also reject defendant's argument that Austria "beneficially," or effectively, owns 56.93% of GBK (Austria owns 51% of OE AG which owns 45% of OE AG—22.95%—plus 33.98% by a political subdivision, Village of Kaprun, equals 56.93%). *See* Def. Reply at 7 n. 4; *see also Musopole*, 172 F.Supp.2d at 447 (formulating "beneficial ownership" theory). Because OE AG's indirect ownership interest is not cognizable under section 1603(b)(2), neither is Austria's 22.95% "beneficial ownership" that flows through it.